**Charles D. OLSON, Appellant,**

v.

**Richard E. ARETZ, et al., Respondents.**

**No. C0-83-1213.**

Court of Appeals of Minnesota.

March 14, 1984.

Robert Edwards, Anoka, for appellant.

Thomas C. Kayser and Laura D. Kadwell, Minneapolis, for respondents.

Heard, considered and decided by PARKER, P.J., FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

This is a legal malpractice case. Plaintiff Olson appeals from an amended judgment which held that neither his attorney, Richard E. Aretz, nor Aretz's law firm was negligent in the handling of Olson's dissolution of marriage. Olson contends that: (1) a district court judge committed prejudi-

cial error in denying a motion to compel discovery of Aretz's medical history; (2) the trial judge erred in denying his demand for a jury trial; and (3) the trial judge erred in refusing to allow plaintiff's counsel to cross-examine an expert witness concerning the basis of his opinion.

The trial court dismissed Olson's complaint but granted judgment to defendant law firm on its counterclaim for legal services rendered. We affirm in part, reverse in part and grant a trial before a jury on the issues raised by the counterclaim.

## FACTS

On November 21, 1972, Charles Olson met with Richard Aretz, an attorney licensed to practice in Minnesota. Olson sought a divorce from Suzanne Olson. Charles and Suzanne have three children. The children were seven, four and two years of age when Olson met with Aretz. Olson told Aretz that the most important issue in the dissolution was custody of the children. Olson wanted custody.

The summons and petition were served in May of 1973. The final judgment was rendered in August of 1979. In the intervening years, Suzanne Olson resided both in institutions and halfway houses. She was depressed and voluntarily sought both inpatient and out-patient treatment for the depression. Olson paid between $200 and $250 per month to his wife for maintenance.

In the years between the commencement of the action and the final decree, the children lived with Charles Olson. He was granted temporary custody in the spring of 1975.

Plaintiff/appellant claims that Aretz told him that since custody had been settled, Aretz would place the matter on the calendar for a final hearing and estimated that the hearing would be in June or July of 1975. When no hearing was set, Olson called Aretz. Olson claims that Aretz told him that the courts were behind but he shouldn't worry, "We'll get it on the calendar." Olson testified that he talked to Aretz on a number of occasions and was

told, "Don't worry, we'll get it on the calendar." Aretz testified that he explained to Olson that it was to Olson's advantage to wait for additional time to pass because of Suzanne's condition. Olson confirmed that Aretz told him that it was to Olson's advantage to wait. Olson believed that Aretz must be right because Aretz was his attorney.

In November of 1977, Olson looked at two double bungalows for investment purposes. He testified that he didn't buy the bungalows because he was afraid he would "lose it to his wife." Olson never told Aretz that he was considering buying the bungalows.

The judgment was dated August 10, 1979. Olson was awarded custody of his children; the household goods and furnishings; and the homestead, subject to a lien in favor of Suzanne Olson in the amount of $20,000 with interest at six percent per annum from the date of the divorce until paid. The judgment requires Olson to pay spousal maintenance of $600 per month for 60 months. It also requires him to pay attorney's fees of $1,200 for his spouse.

Olson now alleges that Aretz was negligent in not concluding the dissolution at an earlier date. Olson claims damages in two areas. He claims that if the dissolution had been completed earlier, Suzanne Olson would have received a smaller lien on the house and he would have invested in two double bungalows at a profit of more than $50,000.

The legal malpractice matter was tried to the court over Olson's objection beginning on May 10, 1983. There was no jury. The trial judge concluded that: (1) neither Aretz nor his law firm was negligent; (2) Olson failed to prove that he was damaged by Aretz's conduct; (3) the evidence with respect to Olson's claimed damages was so speculative and conjectural as not to be ascertainable; and (4) respondent's law firm is entitled to $4,566.03 plus statutory interest as legal fees and costs.

## ISSUES

(1) Did the trial court commit reversible error when it tried this legal malpractice

case to the court rather than to a jury as demanded by plaintiff?

(2) Did the trial court correctly find that the evidence with respect to Olson's claimed damages was speculative and conjectural?

(3) Does Olson have a right to a jury trial on the counterclaim for attorney's fees for services rendered on an open account?

## ANALYSIS

*(1) The issue of right to jury trial.*

Olson demanded a jury trial when he filed his Note of Issue. The day before the trial, Aretz's counsel moved for a court trial. The court granted the latter motion. The court reasoned that because a fact-finder would have to determine what result Olson would have obtained if the dissolution trial had been heard by at least 1975 in order to determine whether the delay was negligent, and because the decisions in a dissolution are not made by a jury, a jury should not make the decisions in this case.

■ Olson contends that he has a constitutional right to a jury trial and that the denial of that right is reversible error. We agree. The right to a jury trial is provided by the Minnesota Constitution: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy." Minn. Const. art. 1, § 4.

The constitutional right to a jury trial was interpreted in *Rognrud v. Zubert*, 282 Minn. 430, 433–34, 165 N.W.2d 244, 247 (1969). The court said:

We have often held that the only actions in which Minn. Const. art. 1, § 4, the statutory predecessor of Rule 38.01, and Rule 38.01 itself guarantee the right to a jury trial are those which were conceived of as "legal" so that such a right existed with respect to them, at the time the Minnesota Constitution was adopted. (Citations omitted). The language of Rule 38.01 is merely an attempt to list those actions which were then, and are now, thought of as "legal" as distinguished from "equitable."

■ The scope of a party's right to trial by jury in this state is defined in Rule 38.01 of the Minnesota Rules of Civil Procedure. *Indianhead Truck Line, Inc. v. Hvidsten Transport, Inc.*, 268 Minn. 176, 196, 128 N.W.2d 334, 346 (1964). Rule 38.01 provides:

In actions for the recovery of money only, or of specific real or personal property, or for a divorce on the ground of adultery, the issues of fact shall be tried by a jury, unless a jury trial be waived or a reference be ordered.

This rule neither enlarges nor diminishes the historical right to a jury trial. *Indianhead Truck Line, Inc.*, 268 Minn. at 196, 128 N.W.2d at 346.

The Minnesota Supreme Court has repeatedly held that the issue of negligence is a question of fact to be resolved by a jury. *Fiwka v. Johannes*, 287 Minn. 247, 249, 177 N.W.2d 782, 783 (1970). The issue in this case is one of negligence and thus must be resolved by a jury. The Supreme Court has specifically recognized the right to a jury trial in a legal malpractice case. In *Hill v. Okay Construction Company, Inc.*, 312 Minn. 324, 340, 252 N.W.2d 107, 118 (1977), the court held that the special verdict must encompass all questions of material fact "to ensure the parties their constitutionally guaranteed right to a jury trial."

The defendants contend that because no right to a jury trial exists in a dissolution case, Olson cannot now claim the privilege of having his dissolution case tried to a jury. Defendants argue that this matter is primarily equitable and may be tried to a court alone.

■ The nature and character of the controversy is determined from all of the pleadings and that determination governs the right to a jury trial. *Landgraf v. Ellsworth*, 267 Minn. 323, 326, 126 N.W.2d 766, 768 (1964). In this case, Olson seeks money damages. If a plaintiff's claim is for the recovery of money, the Minnesota Constitution assures a right to a jury trial.

*Westerlund v. Peterson*, 157 Minn. 379, 384, 197 N.W. 110, 112 (1923).

> By extending equitable jurisdiction to new subjects, the legislature cannot impair the right to trial by jury. It cannot "confer equity jurisdiction * * * in matters in respect to which such jurisdiction did not exist before the adoption of the Constitution, and draw to it a legal cause of action cognizable exclusively in a law court and triable by jury, and have both tried by a court without a jury." *Wiggins & Johnson v. Williams*, 36 Fla. 637, 657, 18 South 859, 30 L.R.A. 754, citing *Scott v. Neely*, 140 U.S. 106, 11 Sup.Ct. 712, 35 L.Ed. 358.

*Id.*

■ Similarly, a trial court may not impair the right to a jury trial even though an underlying action is an equitable one. While *Westerlund* was distinguished in later cases in certain respects, the principle expressed in *Westerlund* that there is a fundamental right to a jury trial in actions at law, has been consistently adhered to by the Minnesota Supreme Court.

■ Where a party has a constitutional right to a jury trial, a denial of the right to a jury trial is reversible error. *Landgraf*, 267 Minn. at 326, 126 N.W.2d at 768. We hold there is a right to a jury trial in a legal malpractice action. However, we decline to reverse the case in chief because the damages claimed were speculative and not capable of proof.

(2) *The issue of damages.*

Plaintiff Olson claims damages in two areas. He asserts that if the dissolution had been completed earlier, Suzanne Olson would have received a smaller lien on the house and he would have invested in two double bungalows at a profit of more than $50,000. The trial judge found that the evidence with respect to Olson's claimed damages was so speculative and conjectural as not to be ascertainable.

Olson seeks lost profits. He claims that he didn't invest in two double bungalows because he was afraid he would lose them to his wife.

The general rule in Minnesota is that damages in the form of lost profits 'may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness. This means that the nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts. * * * This rule does not call for absolute certainty.' (citations omitted)

*Cardinal Consulting Co. v. Circo Resorts*, 297 N.W.2d 260, 266–67 (Minn.1980). "Although the law recognizes that it is more difficult to prove loss of prospective profits to a new business than to an established one, the law does not hold that it may not be done." *Id.* at 267 (quoting *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977)). In this case there is no new business. Olson just *considered* buying the double bungalows. He was only window shopping. He signed no contracts and made no agreements of any kind. In fact, the loan that he inquired about was a home improvement loan. The loan officer testified:

Q You don't have any idea what Mr. Olson was going to use the money for?

A Other than what it says there, home improvement. That's all I have to go on.

Q And a home improvement loan, you say, is to fix up the property, a new garage or something like that?

A Yes, sir.

Q It's not used to buy a whole new piece of property, is it?

A No, that's against FHA requirements.

■ While our courts have allowed recovery for lost profits from new businesses, there must be evidence which shows with reasonable certainty both the occurrence and the extent of the damages. *Id.*

(quoting *El Fredo Pizza, Inc. v. Roto-Flex Oven Co.,* 199 Neb. 697, 705, 706, 261 N.W.2d 358, 363–64 (1978)).

> Uncertainty as to the *fact* of whether any damages were sustained at all is fatal to recovery, but uncertainty as to the *amount* is not. \* \* \*

*Id.* Because it would have been impossible for a jury to have determined with any accuracy that Olson would have bought the bungalows, the evidence is too speculative to support Olson's claim for damages. *See Hornblower & Weeks-Hemphill Noyes v. Lazere,* 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974).

■ Olson also claims that Suzanne Olson would have received a smaller lien on the homestead if the dissolution would have been completed earlier. This alleged loss is conjectural. A 1976 case, *Peterson v. Peterson,* 308 Minn. 365, 368, 242 N.W.2d 103, 106 (1976), held that a trial court had "broad discretion" with respect to the division of property, allowance for alimony, child support, and allowances for expenses of litigation and that absent a clear abuse of discretion, the decision of the trial court would not be disturbed. It is entirely possible that Suzanne Olson would have received the same share of the homestead had the dissolution case been tried earlier. Any attempt to determine how the various assets would have been divided at an earlier date is pure conjecture.

■ Damages which are remote and speculative cannot be recovered. *Jackson v. Reiling,* 311 Minn. 562, 563, 249 N.W.2d 896, 897 (1977). There is no general test of remote and speculative damages; therefore such matters usually should be left to the judgment of the trial court. *Id.* In this case, it is apparent from the findings of the trial judge that, had there been a jury, the trial judge would not have allowed the issue of damages to go to the jury. We have carefully studied the evidence submitted in support of both of Olson's claims for damages and we must conclude, as the trial court did, that as a matter of law, these damage claims were not capable of proof.

While initially Olson should have had a jury trial as a matter of right, we will not reverse on the case in chief because the damages were speculative.

(3) *The issue of Olson's right to a jury trial on the counterclaim.*

■ If there were no counterclaim in this case, we would affirm the decision of the trial court. However, the right of a jury trial on all issues at law requires a consideration of the counterclaim as part of the total case. Notwithstanding our holding with respect to Olson's failure to present credible evidence in support of his claim for damages in his case in chief, we hold that the issues raised by the counterclaim of the defendant law firm for legal services rendered in the amount of $4,566.03, plus statutory interest, are issues which entitle Olson to a jury trial. *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871 (1958).

Since this case is remanded for a jury trial on the counterclaim, it is not necessary to discuss the matters of expert testimony and discovery in detail. Those matters may be viewed in a different light in a new trial on the counterclaim.

## DECISION

The judgment dismissing Olson's action in chief is affirmed. The order for the money judgment award on the counterclaim is reversed and remanded for jury trial.