**Richard ANTONE, Appellant,**

v.

**Israel MIRVISS, Respondent.**

No. A04–1367.

Court of Appeals of Minnesota.

April 12, 2005.

Jeffrey A. Olson, Jeffrey A. Olson, PLLC, Edina, MN, for appellant.

Edward F. Rooney, Minneapolis, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; DIETZEN, Judge; and CRIPPEN, Judge.*

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant-client appeals the district court's dismissal of his legal malpractice action against respondent-attorney, contending that the district court erred when it held that the statute of limitations began to run when appellant and his former spouse got married in reliance on an antenuptial agreement respondent prepared and that appellant's action was commenced after the limitations period expired.

## FACTS

This is a legal malpractice action in which appellant Richard Antone claims he sustained damages because his attorney, respondent Israel Mirviss, improperly drafted an antenuptial agreement that Antone and his former spouse entered. The district court ruled that the statute of limitations had expired before Antone commenced suit and granted Mirviss's motion to dismiss the action. Antone contends the district court erred as a matter of law.

As Antone prepared to marry for a second time, he consulted attorney Mirviss about how he might prevent his spouse from obtaining certain of his assets if he died or if the parties dissolved their marriage. Antone alleges that Mirviss advised

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to    Minn. Const. art. VI, § 10.

that an antenuptial agreement would be the proper protective instrument and that Mirviss promised to draft an agreement "so that, in the event of marriage dissolution, Antone's fiancée would not benefit from any appreciation that occurred relative to Antone's premarital assets/properties."

Mirviss drafted an antenuptial agreement that both parties signed after consulting with their respective attorneys. The agreement disclosed the parties' assets and provided for a limitation on spousal maintenance in the event of a marriage dissolution, but it was silent as to property rights upon dissolution.

The parties married on December 21, 1986, one day after they signed the antenuptial agreement. Antone commenced a marriage dissolution proceeding nearly 12 years later, on September 25, 1998. He alleges that during the pendency of the dissolution he discovered for the first time that the antenuptial agreement did not address the division of the parties' assets and did not prevent his spouse from obtaining assets that Mirviss allegedly promised to protect.

On November 9, 2000, the district court entered judgment of dissolution, ruling that the antenuptial agreement did not affect the court's authority to order a property division that would include assets Antone alleged were to have been covered by the agreement. Nevertheless, the district court awarded all of the appreciated value of such assets to Antone. Ultimately, the supreme court remanded the issue to the district court, stating: "We hold as a matter of law that a portion of the market-related appreciation during the marriage is marital property." *Antone v. Antone*, 645 N.W.2d 96, 103 (Minn.2002). The supreme court's directive to the district court on remand was to determine the portion of the appreciated value Antone's

former spouse was entitled to receive. The district court entered its amended judgment awarding a portion of that value on January 3, 2003.

Premised on theories of negligence, breach of fiduciary duty, and breach of contract, Antone started this action against Mirviss on September 11, 2003. Mirviss moved to dismiss the suit, arguing that the statute of limitations had expired before September 11, 2003. The district court agreed; ruled that the statute began to run on the date the parties married, about 16 years before Antone started the lawsuit; and granted the motion to dismiss. Antone appealed.

## ISSUE

Appellant alleges that he retained respondent attorney to prepare an antenuptial agreement to prevent his spouse from obtaining certain assets in the event of a marriage dissolution. He alleges that respondent failed to prepare a proper agreement and that his spouse obtained a portion of such property in an award 16 years after the date of the marriage. Appellant started suit after the award.

Did the district court err by ruling that the statute of limitations began to run on the date of the marriage, and, thus, the legal malpractice action is time-barred?

## ANALYSIS

Standard of Review

■ So that we can apply the correct standard of review, we first address the procedural posture of the case. Citing the statute of limitations but not citing any rule of civil procedure, Mirviss moved to dismiss the action. Antone's response treated the motion as one for summary judgment under Minn. R. Civ. P. 56. The district court based its order dismissing the action on Minn. R. Civ. P. 12.02(e),

failure to state a claim on which relief can be granted.

Minn. R. Civ. P. 12.02(a)-(f) provides that if, on a motion based on a 12.02(e) defense, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Both parties submitted various affidavits and other "matters outside the pleading[s]," and the district court did not exclude any of the exhibits. Therefore, the district court's dismissal was a summary judgment in favor of Mirviss under Minn. R. Civ. P. 56. Accordingly, the correct standard of review is that applicable to a summary judgment. In an appeal from summary judgment, the appellate court determines whether there is a genuine issue of material fact for trial and whether the district court erred in its interpretation or application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

Statute of Limitations Trigger

■ The sole question on appeal is this: "What event triggers the legal malpractice statute of limitations when the allegation is that the attorney improperly prepared an antenuptial agreement?" As to this question, the parties raise no genuine issue of material fact. When material facts are not in dispute, the question of when a statute of limitations begins to run is one of law, which this court reviews de novo. *Ryan v. ITT Life Ins. Corp.*, 450 N.W.2d 126, 128 (Minn.1990).

■ Under Minn.Stat. § 541.05, subd. (1) (1998), the period of limitation within which a legal malpractice lawsuit must be started is six years. However, the statute is silent as to when that period begins to run. Here, possible triggering dates are the respective dates of the execution of the antenuptial agreement, the marriage, the commencement of the dissolution, the orig-

inal district court judgment, the appellate court decisions, or the entry of the district court's amended judgment. The parties agree (1) that the statute of limitations begins to run when the legal malpractice cause of action accrues, and (2) that the cause of action is deemed to have accrued when it is able to survive a motion to dismiss for failure to state a claim on which relief may be granted. *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn.1999). The parties also agree that the statute begins to run "after damage occurs, even though the ultimate damage is unknown or unpredictable." *Sabes & Richman, Inc. v. Muenzer*, 431 N.W.2d 916, 918 (Minn.App.1988).

Mirviss argues that Antone suffered "some damage" when he and his spouse signed the antenuptial agreement and married because Antone then lost the right to prevent his spouse from claiming and obtaining an interest in the assets in question if the parties eventually dissolved their marriage.

■ To survive a motion to dismiss a legal malpractice action, a plaintiff must allege sufficient facts to show "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). Here, Antone's lawsuit would survive a motion to dismiss if he alleged that, but for Mirviss's negligence and breach of contract, he would not have lost any portion of the appreciated value of the assets in question.

■ The "damages" element in the context of this action is the loss of some appreciated value. Antone's claim accrued

at the point it was "possible on any evidence which might be produced, consistent with the pleader's theory, to grant *the relief demanded." Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn.2000) (quoting *N. States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)) (emphasis added). Stated conversely, if it was not "possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded," the claim will be dismissed. *Id.* The relief Antone demands in this action is money damages for his loss of appreciated value in the marriage dissolution. Thus, Mirviss's argument that Antone sustained "some damage" in the form of the loss of a right is tenable only if that loss of a right was ascertainable as money damages. It was not. Had Antone sued Mirviss at any time before it would have been possible to grant money damages consistent with evidence supporting Antone's theories of negligence or breach of contract, his lawsuit would have been dismissed for failure to state a claim upon which the relief he sought could have been granted.

At the time Antone and his former spouse solemnized their marriage, partly in reliance on the antenuptial agreement, damages for the allegedly faulty agreement were both contingent and unascertainable. They were contingent, by the terms of the very agreement now challenged, on an eventual marriage dissolution. They were contingent on the occurrence of an appreciation in the value of the assets Antone sought to protect. And they were contingent on the court in the dissolution action actually awarding at least some of the appreciation to Antone's former spouse. The money damages that constitute the relief Antone demanded in his malpractice action remained solely and entirely potential until the district court entered its amended judgment. Mirviss

has offered no authority for the proposition that an action for money damages can survive a motion to dismiss when, by any conceivable evidence that might be produced, only the potential for an actual loss of money has occurred.

The district court stated that: "In Minnesota, the statute of limitations on a legal malpractice claim begins to run when action is taken based on legal advice." The court cited *Herrmann* for that proposition. But that is not the holding in *Herrmann* and is not the rule in Minnesota. *Herrmann,* 590 N.W.2d at 644.

Herrmann owned a construction company. *Herrmann,* 590 N.W.2d at 642. With the advice of his attorneys, he created a pension plan and trust for his employees. *Id.* The trust was of a type that came within an Internal Revenue Code prohibition on transactions with certain disqualified persons. *Id.* The code penalty for engaging in such transactions was immediate liability for federal excise taxes and interest. *Id.*

Herrmann's attorneys later drafted documents to create a partnership between the trust and an unrelated corporation. *Id.* The partnership engaged in business with Herrmann's company. *Id.* Some of the transactions were prohibited under the code, and Hermann, as employer, became liable for excise taxes and interest. *Id.*

When Herrmann discovered the prohibition, he spent money to try to address the problem but, when the Internal Revenue Services audited him three years later, it assessed liability for the prohibited transactions. *Id.* at 642–43.

Herrmann sued his attorneys for damages for legal malpractice. *Id.* He started the suit 10½ years after the attorneys helped establish the trust; 9 years after the partnership involving the trust engaged in a prohibited transaction; 3 years

after Herrmann discovered the prohibition; and 6 months after the Internal Revenue Service determined the amount of Herrmann's liability. *Id.* at 642–43 In the malpractice action, the question was: "When did the statute of limitations begin to run?" *Id.* at 643.

Herrmann claimed that the statute began to run three years before the lawsuit when he discovered the prohibition and spent money to try to correct the transgression. *Id.* Because this argument was posited on a "discovery" rule, which had previously been rejected by the supreme court, the court held that the statute began to run on the date of the first prohibited transaction. *Id.* at 642. The significance of that date was that it was the point at which Herrmann "became immediately liable for the excise tax and the interest required" by the Internal Revenue Code. *Id.* at 644.

■ *Herrmann* is instructive for both what it holds and what it does not hold. First, it is clear that in Minnesota we do not apply a discovery rule in determining legal malpractice statute of limitations questions. Thus, Antone's allegation that he did not discover Mirviss's malpractice until the pendency of the dissolution is irrelevant to the issue before us.

It is also apparent that the statute of limitations does not automatically begin to run when the faulty legal advice is given. The alleged malpractice in *Herrmann* was an omission, that is, advice that attorneys in the exercise of reasonable care should have given. That omission first occurred when the attorneys helped create the trust but did not advise as to the tax code restriction and the monetary consequences of violating that restriction. *Id.* at 642. The supreme court did not hold that this arguably negligent omission triggered the statute of limitations. *Id.* at 644.

The next omission occurred when the attorneys drafted the partnership documents but failed to tell Herrmann that if the partnership did business with Herrmann's company it would violate the tax code restriction and Herrmann would become liable for penalties. *Id.* at 642. The supreme court did not hold that this failure triggered the statute. *Id.* at 644.

Despite the attorneys' negligent omissions and despite the potential for tax code penalties on the respective dates of the creation of the trust and the partnership, Herrmann had no damages at those times. The monetary losses he sought to recover in the malpractice action were only potential and were contingent on the engagement in a prohibited transaction. It was only on the occurrence of the first prohibited transaction that Herrmann's damages were transformed from contingent, potential losses to actual losses for which he claimed to be entitled to relief. *Id.* at 642

■ A fair reading of *Herrmann* requires the conclusion that, when money damages allegedly caused by attorney negligence or breach of contract are the relief sought in a legal malpractice action, "some" ascertainable, fixed loss of money must occur before the statute of limitations will begin to run. It is not sufficient that damages are contingent, potential, or even probable. Because Herrmann formed the trust partnership for the purpose of business transactions between the partnership and his company, tax liabilities were certainly potential at the moment the partnership came into existence. But, as the supreme court held, the statute ran only from the time Herrmann incurred an actual liability for the payment of money, irrespective of the irrefutable fact that the malpractice that occasioned the loss occurred 9½ years earlier. *Id.* at 643–44.

■ Applying the *Herrmann* rule here, even though malpractice allegedly oc-

curred when Antone and his spouse got married in partial reliance on the allegedly faulty antenuptial agreement, there was no actionable claim at that time because Antone had not yet sustained the money damages that provide the object of his legal malpractice lawsuit. Until the contingencies of the appreciation in value, the dissolution, and the award of a portion of the appreciated value occurred, Antone had no actionable claim against Mirviss and any attempt to assert a claim before the satisfaction of all three contingences would have resulted in a dismissal. Antone's loss was only potential.

The dissent emphasizes that uncertainty as to the *amount* of damages is not fatal to a legal-malpractice action. We agree and have not said otherwise. But, at the time the marriage was entered, there were no damages at all. The dissent has identified a likely wrong but has not shown how that wrong translates into "some" damages. By its very terms, the antenuptial agreement would not operate until a marriage dissolution. Thus, damages could not occur until the faulty instrument actually became operative, even though it was legally binding upon the entry of the marriage.

The dissent also analogizes this case to *Herrmann*, stating that the entry into the faulty antenuptial agreement is akin to the first prohibited transaction in that case. But the omissions in *Herrmann* occurred before the first prohibited transaction. That event was selected because it was the first time the plaintiff *actually* lost money.

The entire point of the instant lawsuit is that Antone lost money. The case is solely about *money damages*. There were *none* until the antenuptial agreement became operative and the court made a final award of property Antone had sought to protect. It is impossible to imagine what damages in *any* amount Antone would have been able to prove had he started his lawsuit the day after his marriage. He could have shown perhaps that Mirviss had been negligent, but his claim was for money damages. He could not establish even "some" money damages at that point. The jury could not have awarded any amount. His claim, at that time, would have failed for want of proof of an essential element.

Although not binding, we find *Pope v. Zanetis*, 2002 WL 425050 (S.D.Ind.), instructive and persuasive. Before Darla and Harold Pope married, attorney Zanetis drafted an antenuptial agreement that both signed. *Id.* at *1. After the parties' divorce, Darla Pope sued Zanetis for damages for legal malpractice in the preparation of the antenuptial agreement, which allegedly allowed her less property than she would have received without the agreement. *Id.* at *3.

Zanetis asserted the statute of limitations as a defense and moved for summary judgment, contending that the action was started more than two years after he prepared the antenuptial agreement and that the two-year statute of limitations barred the action. *Id.* at *1. Pope argued that she was not injured by Zanetis' negligence until the divorce became final. *Id.*

Denying the motion for summary judgment, the court held that a cause of action accrues when all elements of the claim are present. *Id.* at *3. One of those essential elements is damages. Thus, "[t]he cause of action thus does not accrue unless and until the plaintiff suffers actual loss, such that damages could be shown." *Id.* Holding that there must exist a legally cognizable injury before a cause of action can accrue against a wrongdoer, the court held:

> ... defendants have not identified any ascertainable injury that plaintiff suffered from Zanetis' alleged malpractice until the state court issued its divorce

decree and gave its final approval to the Popes' property division. If plaintiff had filed this malpractice suit before then, it would have been dismissed for lack of an injury.

*Id.* at *6.

The Minnesota rule is in accord. The statute of limitations here began to run upon the date of the entry of the district court's amended judgment.

## DECISION

Because appellant suffered no damages until the district court awarded to his former spouse property that allegedly was to be reserved to him through the antenuptial agreement respondent prepared, the statute of limitations did not begin to run until the time of the award, and appellant's lawsuit three years later was timely.

**Reversed and remanded.**

DIETZEN, Judge (dissenting).

I respectfully dissent. Because Antone suffered "some damage" at the time of the marriage, and not at the time of the dissolution 12 years later, I would affirm the district court's grant of summary judgment dismissing Antone's stale malpractice claim.

Before their wedding, Antone and his former spouse sought legal advice regarding an antenuptial agreement. The first draft of the agreement included provisions on property division that protected Antone's non-marital property from any claims made by his former spouse. When Antone's former spouse refused to sign the agreement, the property-division portion was deleted and a spousal maintenance provision was inserted. Antone alleges that Mirviss did not draft the antenuptial agreement in accordance with his wish to protect his non-marital property from the reach of his former spouse. But Antone had notice at the time of the marriage that his non-marital property was deleted from the agreement and, therefore, was unprotected. His non-marital property thus became a part of the marital estate and was subject to the marital claims of his former spouse.

I agree with the majority that, in the context of when the statute of limitations accrues, "some damage" occurs when a legal malpractice claim can survive a motion to dismiss for failure to state a claim upon which relief can be granted. But I do not agree with the majority that "some damage" must be in the form of ascertainable money damages for the statute of limitations to accrue. *See generally Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999) ("[T]he running of the statute does not depend on the *ability to ascertain the exact amount of damages.*") (emphasis added); *cf. Olson v. Aretz,* 346 N.W.2d 178, 183 (Minn.App. 1984) ("Uncertainty as to the *fact* of whether any damages were sustained at all is fatal to recovery, but uncertainty as to the *amount* is not.") (quotation omitted), *review denied* (Minn. Oct. 30, 1984).

The *Herrmann* Court concluded that the statute of limitations accrues upon the occurrence of the "first prohibited transaction." *Herrmann,* 590 N.W.2d at 643–44. Upon marriage, the antenuptial agreement becomes operative to resolve issues of property division and spousal maintenance if the marriage is dissolved. Marriage is, therefore, the defining event and is akin to a "first prohibited transaction," as enunciated in *Hermann.* At the time of his marriage Antone lost the legal right to claim ownership in his non-marital assets unfettered by his former spouse's inchoate interests. *See generally* Minn.Stat. § 507.02 (1986) (requiring spouse to obtain signature of other spouse to convey marital property); Minn.Stat. § 519.07 (1986)

(detailing procedures to extinguish spouse's inchoate interest in marital property only if spouse is insane or if the other spouse has been deserted or is otherwise entitled to a divorce). Antone's loss of an exclusive interest in his assets was a damage that proximately flowed from the tort of malpractice even if the exact amount was unascertainable at the time of the marriage.

The majority opinion has two troubling implications. First, parties desiring an antenuptial agreement will encounter practitioners reluctant to draft such agreements because they will be held liable for legal advice long after the alleged malpractice has occurred. Second, because "some damage" does not occur until marital property is divided in a dissolution proceeding, the majority opinion creates an open-ended extension of time for a legal malpractice claim. This result is contrary to the general intent of statutes of limitation, which is to bar stale claims and to provide certainty to professional affairs, not to hold practitioners potentially liable for malpractice for many years after the tort allegedly occurred and to a standard of care that has long ago been forgotten.

I would affirm the district court's grant of summary judgment and conclude that Antone's legal malpractice lawsuit falls outside of the six-year statute of limitations.