771 So.2d 631 (2000)
Russell ROBBAT, Searcy Denney Scarola Barnhart & Shipley, P.A., and John Scarola, Appellants,
v.
Alan D. GORDON and Arthur J. Menor, P.A., Appellees.
No. 4D99-2629.
District Court of Appeal of Florida, Fourth District.
December 6, 2000.
*632 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, for Appellant Russell Robbat.
Richard Burton Bush and Janice C. Orr of The Bush Law Group, P.A., Orlando, for Appellants Searcy Denney Scarola Barnhart & Shipley, P.A. and John Scarola.
Alan B. Rose and L. Louis Mrachek of Page, Mrachek, Fitzgerald & Rose, P.A., West Palm Beach, for Appellees.

ON MOTION FOR CLARIFICATION
STEVENSON, J.
On motion for clarification, we withdraw our prior opinion, and substitute the following in its place.[1]
We have for review a final order of summary judgment in favor of the defendants, attorney Alan D. Gordon and Arthur J. Menor, P.A., on statute of limitations grounds with respect to Appellant-Russell Robbat's legal malpractice suit. Because we find that the statute of limitations in this case did not begin to run until there was a resolution on appeal of the litigation involving the allegedly improperly prepared documents, we reverse.
Robbat's malpractice claim arises out of his divorce proceedings. According to the allegations in the complaint, Robbat and his former wife, Mary Glynn, married in Massachusetts on September 24, 1978. Prior to the marriage, the couple executed a prenuptial agreement providing that, in the event of divorce, each would retain their own assets and the husband would pay the wife $5,000 per year in alimony. The Robbats moved to Florida in 1985. In 1986, Russell Robbat purchased a $2,000,000 home in Palm Beach. Robbat wanted to purchase the home in his name alone and retained Alan D. Gordon and Arthur J. Menor, P.A. d/b/a Wien, Malkin & Bettex to advise him whether the prenuptial agreement was enforceable in Florida and would cover the new Florida home. On the advice of counsel, Robbat and his wife executed a postnuptial agreement for the purpose of extending the parties' previous agreement to their new Florida residency and new home. Robbat's newlyretained counsel drafted the second agreement *633 (the Florida postnuptial) and also advised the couple that the initial Massachusetts prenuptial agreement would be enforceable in Florida.
The Robbats divorced in 1991; the divorce proceedings were litigated in a Palm Beach County circuit court and Robbat was represented by Searcy, Denny, Scarola, Barnhart & Shipley ("Searcy"). On July 16, 1991, the trial court rendered a final judgment of dissolution. Among other things, the trial judge found that both the Massachusetts prenuptial and the Florida postnuptial agreements were unenforceable. With respect to the postnuptial agreement, the judge found that the husband had failed to make adequate financial disclosures to the wife. The trial judge ordered that the Palm Beach residence be equally divided between the husband and wife; ordered the former husband to pay $3,000 per month in alimony and $2,800 per month in child support; and ordered the husband to pay $95,998 of the wife's $177,998 attorney's fee bill.
Russell Robbat appealed. On appeal, this court found, contrary to the decision of the trial court, that the Massachusetts prenuptial agreement was enforceable:
As we see the antenuptial agreement controlling on all disputed issues, including the Florida property purchased by the husband in 1986, we therefore reverse the final judgment, leaving the dissolution intact, and remand for the entry of judgment on all property and alimony issues in accordance with the parties' 1978 agreement.
Robbat v. Robbat, 643 So.2d 1153, 1156 (Fla. 4th DCA 1994), review denied, 651 So.2d 1195 (Fla.1995). Although Robbat defended both agreements on appeal, the court was able to dispose of the case on the basis of the Massachusetts prenuptial agreement and did not address the validity of the subsequent Florida postnuptial agreement. The appellate decision was rendered on October 5, 1994, and rehearing was denied on November 8, 1994.
Less than two years later, on April 3, 1996, represented by Searcy, Russell Robbat sued attorney Gordon and Arthur J. Menor, P.A. for legal malpractice. In the complaint, appellant recognized that this court overturned the trial judge's finding that the 1978 Massachusetts prenuptial agreement was unenforceable and reversed the distribution that resulted. Robbat alleged that despite prevailing on appeal on the issue of the enforceability of the Massachusetts agreement, he was still damaged by the improper preparation of the Florida postnuptial agreement. Robbat alleged that his former wife had placed the $853,776 that was distributed to her by virtue of the original final judgment of dissolution beyond his reach and that, despite the ruling of the appeals court, that money could not be returned to him. Robbat also maintained that but for Gordon and Arthur J. Menor, P.A.'s negligence, he would never have been required to litigate the enforceability of the Massachusetts agreement.
Gordon and Arthur J. Menor, P.A. filed a motion to dismiss, arguing among other things that Robbat had failed to state a cause of action for legal malpractice as any loss suffered was not the result of the attorney's advice, which turned out to be accurate, but rather the result of the trial court's error or the husband's failure to seek a stay pending appeal and that the malpractice suit was barred by the relevant two-year statute of limitations. The trial court denied the motion to dismiss. Gordon and Arthur J. Menor, P.A. then filed a third party complaint against Searcy, alleging that any damage to Robbat resulted from the subsequent attorneys' failure to seek a stay of the final judgment pending appeal and the failure to properly represent Robbat at the trial court level. As a result, Searcy withdrew as counsel for Robbat.
Thereafter, Gordon and Arthur J. Menor, P.A. filed a motion for summary judgment, contending, as they had in their motion to dismiss, that Robbat's suit for *634 legal malpractice was barred by the two-year statute of limitations. They argued that, at the latest, the statute of limitations on the malpractice claim began to run on July 16, 1991, when the trial judge rendered the final judgment of dissolution, finding both the prenuptial and postnuptial agreements unenforceable. Robbat, on the other hand, argued that the statute of limitations did not begin to run until October 5, 1994, the date the decision on appeal was rendered. The trial judge sided with Gordon and Arthur J. Menor, P.A., finding that the suit was for transactional malpractice and that Robbat was damaged, at the very latest, by the date of rendition of the final judgment of dissolution July 16, 1991. The trial court concluded that the cause of action accrued, at the very latest, on July 16, 1991, and that Robbat's legal malpractice suit, filed on April 3, 1996, was time-barred.
Statute of limitations
Generally, a statute of limitations begins to run from the time a cause of action accrues. See § 95.031, Fla. Stat. (1997). A "cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (1997). For professional malpractice actions, the statute of limitations is two years, with the period of limitations running "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence." § 95.11(4)(a), Fla. Stat. (1997).
Rowe v. Schreiber, 725 So.2d 1245, 1247 (Fla. 4th DCA)(on rehearing)(addressing issue of when the statute of limitations begins to run on criminal defendant's claim for legal malpractice, asserting ineffective assistance of counsel), review granted, 743 So.2d 14 (Fla.1999).

Professional Malpractice
With respect to legal malpractice actions, Florida courts have consistently drawn a distinction between those malpractice actions arising from transactional work and those arising from errors or mistakes committed during the course of litigation. This distinction is well highlighted in Breakers of Fort Lauderdale, Ltd. v. Cassel, 528 So.2d 985 (Fla. 3d DCA 1988). There, the Third District held that the cause of action for an attorney's alleged malpractice in failing to perfect a settlement agreement accrued at the moment the client, Breakers of Fort Lauderdale, learned that the lawsuit against it had been revived. In so holding, the court distinguished its earlier opinion in Diaz v. Piquette, 496 So.2d 239 (Fla. 3d DCA 1986), a case involving errors committed during trial:
The court's opinion in Diaz v. Piquette, 496 So.2d 239 (Fla. 3d DCA 1986), review denied, 506 So.2d 1042 (Fla.1987), upon which Breakers relies, addresses the question of when a cause of action for legal malpractice accrues against an attorney who has lost a case at trial, not the question of when a cause of action for legal malpractice accrues against an attorney who has allegedly improperly failed to consummate the settlement of a case. In the former situation, as Diaz correctly holds, there can be no claim of malpractice until the loss determined at trial is made final on appeal; in the latter and present situation, one need not await the eventual result of the lawsuit that should have been settled to determine that the failure to complete the settlement is malpractice and that damage from that failure, although not then completely ascertainable, is immediate.
528 So.2d at 986.
The instant malpractice claimthe alleged improper preparation of the Florida postnuptial agreementis transactional. Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990), is the landmark Florida case concerning the statute of limitations in transactional malpractice cases.[2] *635 In Peat, Marwick, the Lanes hired the accounting firm to provide tax advice and to file their federal income tax returns. Peat, Marwick advised the Lanes to invest in a limited partnership. The Lanes invested and then, on the advice of Peat, Marwick, claimed deductions on their income tax returns for losses sustained by the partnership.
On March 17, 1981, the IRS sent the Lanes a "Ninety-Day Letter" or notice of deficiency, advising the Lanes that there were deficiencies in their 1976 and 1977 returns due to the claimed deductions for the partnership losses. See 565 So.2d at 1324. The deficiency letter advised the Lanes that they had the option to appeal the IRS' determination in the United States Tax Court. Peat, Marwick took the position that their advice had been correct, that the deductions were proper, and advised the Lanes to challenge the deficiency determination in tax court. The Lanes followed Peat, Marwick's advice and filed their challenge on June 8, 1981. Thereafter, the Lanes agreed to the entry of a stipulated order, requiring them to pay a deficiency amount agreed to by them and the IRS. The order was rendered May 9, 1983.
On February 22, 1985, the Lanes filed a malpractice action against Peat, Marwick. Peat, Marwick moved for summary judgment in its favor, arguing that the two-year statute of limitations had begun to run when the IRS sent the deficiency letter, March 17, 1981, and that the malpractice suit was time-barred. The trial court agreed and entered summary judgment in favor of Peat, Marwick. The Lanes appealed. The Third District held that the trial court erred in its ruling regarding the commencement of the statute of limitations, finding that the Lanes did not suffer redressable harm until the tax court entered judgment against them because until that time, "the Lanes knew only that Peat Marwick might have been negligent."
Having accepted conflict jurisdiction, the Florida Supreme Court affirmed the Third District's decision in Peat, Marwick. First, the Florida Supreme Court compared the accounting malpractice action to a legal malpractice action and held that, absent legislative intent to the contrary, "the basic principles for all professional malpractice actions should be the same." Id. at 1325. The Court recognized that the applicable statute of limitations was the two-year period provided in section 95.11(4)(a) and that "[g]enerally, a cause of action for negligence does not accrue until the existence of a redressable harm or injury has been established and the injured party knows or should know of either the injury or the negligent act." Id. The Court then went on to hold that there was no redressable injury until the tax court entered its judgment.
In this case, the Lanes chose to appeal the IRS's determination to the United States Tax Court, in accordance with the advice given them by Peat Marwick. We find, consistent with the holdings of numerous attorney malpractice cases, that until their tax court action was final, the Lanes did not have an action for malpractice.... Until the tax court determination, both the Lanes and Peat Marwick believed that the accounting advice was correct; consequently, there was no injury.
Id. at 1326.
In reaching its decision in Peat, Marwick, the supreme court distinguished the case before it, from the facts present in Sawyer v. Earle, 541 So.2d 1232 (Fla. 2d DCA 1989), the case with which the Third District had certified conflict.
We note that Peat Marwick continued to assert that its advice was correct after the Lanes received the "Ninety-Day Letter." On that basis, we find that this *636 case can, to a certain extent, be distinguished from the Second District Court of Appeal's decision in Sawyer v. Earle.... In Sawyer, the client understood and believed that his representation had not been proper in 1981 when he dismissed Earle as his lawyer. In the instant case, however, the Lanes believed that their accountant's advice was correct, and they in fact proceeded on that advice to challenge the IRS's determination.
565 So.2d at 1326-27.
Following the supreme court's decision in Peat, Marwick, this court decided Throneburg v. Boose, Casey, Ciklin, Lubitz, Martens, McBane & O'Connell, 659 So.2d 1134 (Fla. 4th DCA), review dismissed, 664 So.2d 248 (Fla.1995), another case involving the statute of limitations in a transactional legal malpractice suit. In that case, the complaint alleged that the plaintiff had retained counsel to amend the declaration of covenants on property that the plaintiff was purchasing. The purpose of the amendments was to reduce the number of lots from nine to four and to ensure that the plaintiff's liability for assessments on the lots would accrue only after construction and the issuance of a certificate of occupancy for each lot. See 659 So.2d at 1135. The amendments were filed in February 1990. A year later, the association assessed dues on the lots. At a meeting with the association, several members suggested that further amendment would cure the problem; the plaintiff's counsel concurred, advising plaintiff to further amend the declarations. Then, several months later, in November of 1991, in an action concerning the association and another property owner, the circuit court declared that the amendment was invalid. Within two years from the date of the November 1991 decision of the circuit court, the plaintiff commenced a legal malpractice action against his attorneys. The trial court dismissed the action on statute of limitations grounds and the plaintiff property owner appealed. This court reversed.
We understand Peat Marwick to draw a distinction between knowledge of actual harm from legal malpractice and knowledge of potential harm. The former begins the limitations period; the latter does not. Legal services, like accounting services, are often subject to differing views among practitioners. Lawyers often disagree with one another on the same transaction. It seems clear to us that Peat Marwick, properly understood, means that the limitations period on claims of legal malpractice should not commence until it is reasonably clear that the client has actually suffered some damage from legal advice or services.
In this case, that means that legal malpractice would not be crystalized until the circuit court ruled that the amendment was invalid. In other words, the injury was not established merely because the association thought the amendment ineffective. There was no redressable harm to client until the court found the amendment to be invalid. See also Spivey v. Trader, 620 So.2d 212 (Fla. 4th DCA 1993)(limitations period for suit against counsel did not begin to run until entry of judgment in proceedings supplementary).
659 So.2d at 1136.
A reading of Throneburg alone might suggest that the statute of limitations began to run in the instant case when the circuit ruled adversely to Robbat. That result, however, would be inconsistent with Peat, Marwick, where the cause of action was held not to have accrued until the Lanes' challenge to the tax deficiency, which the clients had voluntarily undertaken, had been completed. Read together, Peat, Marwick and Throneburg stand for the proposition that knowledge of an adverse decision by a lower tribunal is not sufficient to start the running of the statute of limitations in a transactional malpractice claim where the client chooses *637 to defend the actions of the defendant on appeal, since to require the client to pursue the malpractice claim while at the same time defending the professional's actions on appeal would place the client "in the wholly untenable position of having to take directly contrary positions in [the] two actions." Peat, Marwick, 565 So.2d at 1326.[3]
In the instant case, since Robbat's harm exists, if at all, solely because of the invalidity of the postnuptial agreement, then, as in Peat, Marwick, since the client was defending the advice given him, the statute of limitations did not begin to run until after this court rendered its decision on appeal; until that time, there was no redressable harm. Like the plaintiffs in Peat, Marwick, Robbat defended the actions of counsel throughout the underlying litigation. Since Robbat's malpractice claim was filed within two years of the date of this court's decision on Robbat's appeal of the case in which he voluntarily defended the postnuptial agreement in court, the malpractice claim was timely filed.
Accordingly, the order of summary judgment is reversed.[4]
REVERSED and REMANDED.
WARNER, C.J., and GUNTHER, J., concur.
NOTES
[1] Attorney Arthur J. Menor has filed a motion seeking to have this court clarify that the references in our prior opinion in this case to "Menor" were to Arthur J. Menor, P.A., one of two named defendants in this case, and not to Arthur J. Menor, individually. We grant attorney Menor's motion.
[2] See Silvestrone v. Edell, 721 So.2d 1173, 1174 n. 1 (Fla.1998), where the court stated affirmatively that Peat, Marwick was a transactional malpractice case even though it involved some elements of litigation. Litigational malpractice claims are governed by the supreme court's decision in Silvestrone.
[3] It does not appear from the facts recounted in the opinion that the plaintiffs in Throneburg appealed the circuit court's determination.
[4] We recognize that, as the result of the particular facts of this case, a very unusual scenario has resulted. When this court reversed the final judgment of dissolution, it did not address the issue of the validity of the Florida postnuptial agreement. The failure to address that particular issue makes it possible for Robbat to contend that negligence in drafting the Florida postnuptial agreement caused him harm even though he prevailed in the prior appeal. Our holding today is limited to the issue of whether Robbat timely filed his suit for legal malpractice.