Richard ANTONE, Respondent,

v.

Israel MIRVISS, Appellant.

No. A04–1367.

Supreme Court of Minnesota.

Aug. 17, 2006.

Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for Appellant.

Jeffrey A. Olson, PLLC, Julia A. O'Brien, Edina, MN, for Respondent.

David F. Herr, Haley N. Schaffer, Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, for MN Lawyers Mutual Ins. Co. Amicus Curiae.

Thomas J. Shroyer, Peter A. Koller, Moss & Barnett, P.A., Minneapolis, MN, for MN Society of Certified Public Accountants Amicus Curiae.

Mary C. Lauhead, St. Paul, MN, Michael Dittberner, Clugg, Linder & Dittberner & Edmiston, Ltd., Edina, MN, Donald L. Enockson, El–Ghazzawy Law Offices, Minneapolis, MN, for Family Law Section, MSBA Amicus Curiae.

## OPINION

ANDERSON, PAUL H., Justice.

Richard Antone brought this legal malpractice action against his attorney, Israel Mirviss, alleging that Mirviss was negligent when he drafted an antenuptial agreement. Antone asserted that Mirviss failed to draft an agreement that protected

his interest in any marital appreciation to his premarital property. The Hennepin County District Court dismissed Antone's complaint under the six-year statute of limitations for legal malpractice actions, concluding that Antone's cause of action accrued either when he signed the agreement and was married or when the premarital property thereafter appreciated, both of which events occurred more than six years before this action was commenced. The Minnesota Court of Appeals reversed, holding that Antone's cause of action did not accrue until the district court awarded a portion of the marital appreciation of Antone's premarital property to his wife in a marital dissolution proceeding, which event occurred less than six years before this action was commenced. We reverse the court of appeals.

In December 1986, respondent Richard Antone hired appellant Israel Mirviss as his attorney to draft an antenuptial agreement. He did so in anticipation of his marriage to Debra Schmidt. At that time, Antone owned several rental properties and he wanted to protect any appreciation in value of those properties from claims Schmidt could assert as his spouse. Antone alleges that he asked Mirviss to draft the antenuptial agreement to protect any appreciation from such claims by Schmidt. Schmidt at first refused to sign the agreement prepared by Mirviss, but changed her mind the next day after consulting with her own attorney and making some revisions to the agreement. Although the first draft of the agreement may have protected Antone's interest in any marital appreciation to his premarital properties, the final draft did not.[1] Antone alleges

that Mirviss gave him only the signature page of the agreement and assured him that the agreement protected the marital appreciation of his premarital properties.[2]

Antone and Schmidt were married on December 21, 1986. In 1998, Antone petitioned for dissolution of the marriage. He stated in a deposition that when he petitioned for dissolution of the marriage, he discovered for the first time that the antenuptial agreement failed to protect his interest in the marital appreciation of his premarital properties. He also said he would not have married Schmidt if Mirviss had provided him with this information.

On November 9, 2000, the district court in the dissolution proceeding found that, although Antone's premarital properties appreciated in value during the marriage, the appreciation was attributable only to market forces, not marital efforts. *Antone v. Antone*, 645 N.W.2d 96, 99 (Minn.2002). As a result, the dissolution court awarded all of the marital appreciation to Antone as nonmarital property. Schmidt appealed, and the court of appeals affirmed. We then granted Schmidt's petition for review and on June 13, 2002, we reversed, holding that the district court erred by not apportioning the marital appreciation between Antone and Schmidt. *Id.* at 102–03. On January 3, 2003, the district court issued an amended dissolution judgment awarding Schmidt a portion of the marital appreciation of Antone's premarital property.

In September 2003, Antone commenced this legal malpractice action against Mirviss for negligence, breach of fiduciary duty, and breach of contract. As to dam-

---

1. Article five of the first draft provided: "Each of them waives any claim to any part of or interest in the non-marital property owned by the other and in the marital property hereafter acquired by the other * * *." The final draft, as signed by the parties, omit-

ted article five and did not otherwise address the division of property on dissolution.

2. Antone does not allege fraud and does not argue for the tolling of the statute of limitations.

ages, Antone alleges in his complaint that Schmidt received more money from the property award in the dissolution proceeding than she would have received "had the antenuptial agreement been drafted properly and as contemplated and explained to Antone by Mirviss." Antone's prayer for relief does not itemize damages.

Without specifying the procedural rule relied on, Mirviss filed a "motion to dismiss," arguing that Antone's claims were "barred by the 6 year [legal malpractice] statute of limitations set out in Minn.Stat. § 541.05, subd. 1." In response, Antone filed a "memorandum of law opposing *summary judgment.*" (Emphasis added.) The district court treated Mirviss's motion as a motion to dismiss for failure to state a claim upon which relief can be granted under Minn. R. Civ. P. 12.02(e). The court then granted the motion, concluding that Antone suffered damage, and thus the statute of limitations began to run, either (1) as soon as he was married because "[t]here was a risk of loss of part of the appreciation of [his] nonmarital property," or (2) as soon as his nonmarital property increased in value because "at that point, [he] lost rights to a portion of that increase in value." [3]

A divided court of appeals reversed, holding that the requisite damages for accrual of Antone's cause of action commenced when Antone "sustained the money damages that provide the object of his legal malpractice lawsuit." *Antone v. Mirviss,* 694 N.W.2d 564, 571 (Minn.App.2005). The court also said Antone's loss was only "potential," and that he had no actionable claim for malpractice "[u]ntil the contingencies of the appreciation in value, the dissolution, and the award of a portion of the appreciated value occurred." *Id.* The dissent concluded that Antone was damaged when he married Schmidt because the antenuptial agreement immediately deprived him of an exclusive interest in his nonmarital assets. *Id.* at 572 (Dietzen, J., dissenting). We granted Mirviss's petition for review.

## I.

In reviewing a grant of summary judgment,[4] we determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Wallin v. Letourneau,* 534 N.W.2d 712, 715 (Minn.1995). There are no material facts at issue on this appeal. Thus we need only determine "whether the court erred in applying the law regarding the accrual of the cause of action and the running of the statute of limitations." *Weeks v. American Family Mut. Ins. Co.,* 580 N.W.2d 24, 26 (Minn. 1998). This is a question of law that we review de novo. *Id.*

---

**3.** The district court recognized that this second alternative would bar recovery only if the property value increased before August 31, 1997, six years and one day before service of the complaint. But the court reasoned that the dissolution court made findings that the value increased during the marriage and, although it did not specify when the increases took effect, "it is logical that some of [the property] increased in value during this almost eleven year period."

**4.** Antone argues that because the district court treated Mirviss's motion as a Rule 12 motion to dismiss, we are limited to the facts in the pleadings and cannot rely on the depositions and other documents. But Rule 12 provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Minn. R. Civ. P. 12.02. Because both Mirviss and Antone presented affidavits in support of their positions and the district court did not exclude them, we agree with the court of appeals that Mirviss's motion should be treated as a motion for summary judgment under Rule 56.

█ The statute of limitations for legal malpractice is six years. Minn.Stat. § 541.05, subd. 1(5) (2004). The statute does not specify when the six-year period begins to run. We have consistently held that the statute begins to run when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *Dalton v. Dow Chemical Co.*, 280 Minn. 147, 152–53, 158 N.W.2d 580, 584 (1968). To state a claim for legal malpractice upon which relief can be granted, a plaintiff must allege "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; (4) that but for [attorney-]defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). The only disputed element here is when damages accrued.

█ There are three types of accrual rules based on the damages element.[5] The first rule is the traditional "occurrence" rule, which assumes that nominal damages occur, the cause of action accrues, and the statute of limitations begins to run, simultaneously with the performance of the negligent or wrongful act. *See, e.g., Wilcox v. Executors of Plummer*, 29 U.S. (4 Pet.) 172, 177, 7 L.Ed. 821 (1830); *Greene v. Morgan, Theeler, Cogley & Petersen*, 575 N.W.2d 457, 459 (S.D.1998). Under this rule, the statute of limitations begins to run as soon as the negligent act is committed even though there is no actual damage at that time. 575 N.W.2d at 459. Most jurisdictions have moved away from the occurrence rule. 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 22.10, at 303 (2006) (stating that, by requiring suit before actual damage has occurred, the occurrence rule "encourages speculative litigation that can involve the client, the attorney and the courts in wasteful economic behavior"). We likewise have rejected the occurrence rule. *Dalton*, 280 Minn. at 154, 158 N.W.2d at 585 ("[I]t is not the wrongful, i.e., negligent act, which gives rise to the claim. For there must be damage caused by it.") (quoting *Brush Beryllium Co. v. Meckley*, 284 F.2d 797, 800 (6th Cir.1960)).

█ At the other end of the spectrum is the "discovery" rule, under which the cause of action accrues and the statute of limitations begins to run only when the plaintiff knows or should know of the injury. *See, e.g., Mumford v. Staton, Whaley & Price*, 254 Md. 697, 255 A.2d 359, 365 (1969); *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398, 401 (1989). Some legal commentators have noted that a significant disadvantage of the discovery rule is that it provides "open-ended liability." Mallen & Smith, *supra*, § 22.15, at 420. We have also rejected the discovery rule. *Dalton*, 280 Minn. at 153, 158 N.W.2d at 584 ("Under our statutes it has been determined that ignorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of action.").

█ Minnesota has taken the middle ground by adopting the "damage" rule of

---

5. Every factually similar foreign case involving allegations of the negligent preparation of an antenuptial agreement can be distinguished from this case on the basis of these differences in accrual rules. *See, e.g., Robbat v. Gordon*, 771 So.2d 631 (Fla.Dist.Ct.App. 2000) (discovery rule jurisdiction); *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989) (discovery rule jurisdiction); *Greene v. Morgan, Theeler, Cogley & Petersen*, 575 N.W.2d 457 (S.D.1998) (occurrence rule jurisdiction).

accrual, under which the cause of action accrues and the statute of limitations begins to run when " 'some' damage has occurred as a result of the alleged malpractice." *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn. 1999); *see also Dalton,* 280 Minn. at 154, 158 N.W.2d at 585 ("Until there is some damage, there is no claim and certainly a statute prescribing the time in which suit must be filed * * * can never operate prior to the time a suit would be permitted.") (quoting *Brush Beryllium Co.,* 284 F.2d at 800). As noted in Mallen & Smith, "[t]he injustices and, frequently, illogical results from applying the occurrence rule have prompted most courts to add the requirement that there be actual injury before a cause of action accrues for purposes of a statute of limitations." Mallen & Smith, *supra,* § 22.11, at 306. We continue to agree with the rationale supporting and the policies reflected by the "some damage" rule of accrual, and thus we reaffirm our prior case law adopting this rule.

## II.

Mirviss focuses on this "some damage" rule and asserts that the court of appeals erred in focusing only on "the damage" for which Antone seeks recovery—the amount of the marital appreciation in Antone's premarital property that was awarded to Schmidt. Mirviss argues that under the damage rule, Antone's cause of action accrued and the statute of limitations began to run when *any* compensable damage occurred, even damage unrelated to the injury for which Antone ultimately seeks relief. Antone agrees that the standard is

"some damage," but asserts that this standard means the occurrence of "some damage supporting the relief sought." He argues that because the relief he seeks is the portion of the marital appreciation of his premarital property that was awarded to Schmidt at the conclusion of their marriage dissolution proceeding, the statute of limitations did not accrue until the property award was actually made in 2003.

█ Our prior cases have not addressed the issue of what type of damages trigger accrual of the cause of action and the running of the statute of limitations. But our case law does support a broad interpretation of the concept of "some damage." *See, e.g., Noske v. Friedberg,* 670 N.W.2d 740, 742 (Minn.2003) ("The showing a plaintiff must make in order to survive a motion to dismiss under Minn. R. Civ. P. 12.02(e) is minimal."). Mallen & Smith also endorsed this broad interpretation when they said:

> Where a greater injury remains uncertain, tolling is not appropriate if another injury is a consequence of the same alleged misconduct. An attempt to divide different damages resulting from one error into "separate" causes of action is illogical and antithetical to the purpose of a statute of limitations.

Mallen & Smith, *supra,* § 22.12, at 368.[6] Accordingly, we conclude that the rule that is the most logical and consistent with our precedent is that a cause of action accrues, and the statute of limitations begins to run, on the occurrence of any compensable damage, whether specifically identified in the complaint or not.

---

**6.** Other jurisdictions that follow the "some damage" rule of accrual generally agree that a cause of action accrues upon the occurrence of any compensable damage, not just the damage for which relief is sought. *E.g., Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc.,* 850 So.2d 259, 271 (Ala.2002); *Jordache*

*Enter., Inc. v. Brobeck, Phleger & Harrison,* 18 Cal.4th 739, 76 Cal.Rptr.2d 749, 958 P.2d 1062, 1065 (1998); *Figueroa v. Merrick,* 128 Idaho 840, 919 P.2d 1041, 1043 (Ct.App. 1996); *Jason v. Brown,* 637 So.2d 749, 751 (La.Ct.App.1994).

### III.

 We now turn to the issue of whether Antone suffered any compensable damage more than six years before the commencement of this action. Here, our decision in *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641 (Minn.1999), is instructive. In 1986, the defendant law firm in *Herrmann* prepared an employee benefit pension plan and trust for the plaintiff clients, but allegedly did not advise the clients that the tax laws prohibited them from engaging in certain transactions with the plan. *Id.* at 642. When the clients engaged in these transactions in 1987, they immediately became liable for significant excise taxes and interest. In 1993, the clients first discovered that the transactions were prohibited and began to address the problem. *Id.*

Three years later, in 1996 and shortly after the Internal Revenue Service notified the clients of their tax liability and interest, they commenced a legal malpractice action against the law firm. *Id.* at 642–43. The clients alleged that the law firm was negligent in failing to advise them that the transactions were prohibited. The law firm argued that the action was barred because the client was damaged in 1987, and thus the statute of limitations began to run more than six years before the commencement of the action. We held that some damage occurred in 1987 when the client became "immediately liable" for the tax because at that point the client could have commenced an action for legal malpractice that would have survived a motion to dismiss for failure to state a claim. *Id.* at 643–44.

In *Antone v. Antone*, 645 N.W.2d at 103, we held that the appreciation of Antone's premarital property during his marriage was marital property. On remand the district court awarded Schmidt part of this appreciation. This appreciation is what Antone claims he paid Mirviss to protect and what Antone claims he lost because of Mirviss's negligence. When Antone was single, his rental property appreciation belonged solely to him. As soon as Antone was married, in the absence of an effective antenuptial agreement, the appreciation was no longer protected from Schmidt's claims and Antone lost the right to unilaterally change this consequence. *See* Minn. Stat. § 519.11, subds. 1a, 2a (2004) (requiring mutual consent to enter into a postnuptial contract or amend an antenuptial contract). In other words, the consequence of Antone marrying Schmidt without having an effective antenuptial agreement in place was that he was left without the nonmarital property protections he sought to obtain through the antenuptial agreement drafted by Mirviss. For Antone, the consequences were both immediate and irremediable as of the date of the marriage.

When Antone entered his marriage with Schmidt, he passed a point of no return with respect to the laws of marital and nonmarital property and he did so without the legal shield he retained Mirviss to provide. *See, e.g.,* Minn.Stat. § 518.58, subd. 1 (requiring the division of marital property upon a dissolution of a marriage). Each property-related step Antone took after the date of his marriage was, unbeknownst to him, unprotected. While this reality needs no additional amplification, it is supported by Antone's own testimony that he would not have entered into the marriage if he had known the antenuptial agreement did not adequately protect his property interests. In essence, Mirviss's representations caused Antone to do something he would not have otherwise done because, from the moment the marriage was entered into, Schmidt was legally entitled to make a claim upon a portion of any appreciation in his premarital property. We conclude that this exposure was an

injury that resulted in some damage sufficient to survive a motion to dismiss.

The dissent argues that the seeds of some damage did not ripen until the dissolution of the marriage because Antone's risk of losing some part of the marital appreciation of his premarital property was not fixed or certain when the marriage was entered into. But we have held that the ability to ascertain the exact amount of damages is not dispositive with respect to the running of the statute of limitations. *See generally Herrmann,* 590 N.W.2d at 643 (stating that "[t]he running of the statute *does not depend* on the ability to ascertain the exact amount of damages.") (emphasis added). Accordingly, the inability to calculate the precise damage at the time of marriage does not preclude the running of the statute of limitations from that point in time. At the time of his marriage, Antone lost the legal right to unfettered ownership in his premarital property. This loss was not a mere seed planted when Antone said "I do"; rather, it was a fully-matured briar patch.

The difficulties that would result from Antone's proposed rule are illustrated by the different positions taken by the dissent and the court of appeals as to when Antone's cause of action accrued. The court of appeals concluded that the cause of action accrued when Antone "sustained the money damages that provide the object of his legal malpractice lawsuit." *Mirviss,* 694 N.W.2d at 571. The dissent concludes that the cause of action accrued either in 1998 when Antone incurred attorney fees defending against his liability or in 2000 when the first judgment and decree was issued awarding any appreciation in value solely to Antone. We conclude that such variations insert too much ambiguity into the law and in the end come very close to establishing a discovery rule which we previously rejected because it presented the potential for unintended, open-ended liability.

We conclude that Antone suffered some damage on December 21, 1986, when he and Schmidt entered into their marriage. Because December 21, 1986, was more than six years before the commencement of this action, the district court correctly determined that the statute of limitations bars Antone's action and requires entry of summary judgment in Mirviss's favor. Therefore, we hold that the court of appeals erred when it concluded that Antone did not suffer damage until the award of a portion of the appreciated value to Schmidt. The judgment of the court of appeals is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Reversed.

## DISSENT

HANSON, Justice, (dissenting).

I agree with the majority's conclusion that a cause of action for legal malpractice accrues, and the statute of limitations begins to run, on the occurrence of some compensable damage, even damage not specifically alleged in the complaint. But I disagree with the conclusion that Antone suffered some compensable damage when he married, more than six years prior to the commencement of this action. Instead, I would follow Minnesota's established rule that, where liability is contingent on a future event that is not certain to occur, no compensable damage occurs unless and until that future event occurs. Because any liability that Antone might have incurred to Schmidt by reason of their marriage was contingent, Antone could not have suffered any compensable damage until the contingency occurred; that is, when Antone filed for marital dissolution and either (1) the antenuptial

agreement became operative by the issuance of the decree of marital dissolution, or (2) Antone incurred expenses to defend against a potential liability that should have been prevented by the antenuptial agreement, whichever first occurred. Because there was no evidence that either event occurred more than six years prior to the commencement of this legal malpractice action, I would affirm the court of appeals decision that Antone's claim is not barred by the statute of limitations.

I agree that our decision in *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641 (Minn.1999), is instructive, but I take completely different lessons from it than those extracted by the majority. In *Herrmann* the facts presented four discrete events: (1) the negligent performance of legal services and the payment of legal fees for those services in 1986; (2) the creation of tax liability by engaging in prohibited transactions in 1987; (3) the expenditure of funds to attempt to remedy the problem in 1993; and (4) the IRS assessment of the tax liability in 1996. We did not regard the performance of legal services or the payment of legal fees for those services in 1986 as causing the malpractice claim to accrue, presumably because those acts would only be relevant to an occurrence rule, which we had already rejected. Instead, we held that "some damage" occurred in 1987 when the clients became "immediately liable" for the tax. *Id.* at 643–44. We concluded that at that time the clients could have commenced an action for attorney malpractice that would have survived a motion to dismiss for failure to state a claim. *Id.* We did not separate the damages that the clients suffered in 1987 from that suffered in 1993 or 1996 or allow the claim to proceed for those later damages.

Accordingly, I take this general guidance from *Herrmann*: (1) because Minnesota does not follow the occurrence rule of accrual, the negligent performance of legal services and the essentially simultaneous payment of legal fees for those services are not sufficient for a cause of action to accrue; (2) the "some damage" rule of accrual looks to the first occurrence of any compensable damages sufficient to allow the plaintiff to survive a motion to dismiss; (3) the "some damage" rule does not focus only on the damages alleged in the complaint; and (4) to the extent that the client's claim is for indemnity for a liability incurred by the client as a result of the attorney's negligent advice or performance, some damage only occurs when that liability becomes "immediate," which I take to mean fixed and certain.

These general principles lead me to reject the majority's damage arguments. Also, I would reject the additional damage arguments made by Mirviss but not addressed by the majority. The majority concludes that Antone suffered some compensable damage on December 21, 1986, more than six years prior to the commencement of this action, when he and Schmidt married, because Antone "was no longer protected from Schmidt's claims and Antone lost the right to unilaterally change this consequence." Mirviss suggests that two other events that occurred more than six years prior to the commencement of this action caused some compensable damage: when Antone's legal status changed from single to married when he married Schmidt in reliance on Mirviss' representations; and Antone's payment of legal fees to Mirviss.

*1. Lost legal rights associated with marriage*

It is true, as the majority asserts, that at the time Antone married, the antenuptial agreement became *effective,* in the sense that Antone lost the right to unilat-

erally revoke it. But Antone's loss of his right to revoke did not cause any actual damage because his risk of losing some part of the marital appreciation of his premarital property was not fixed or certain at that time. This is because the antenuptial agreement would not become *operative* unless and until there was a dissolution of the marriage. Until then, Antone's liability to Schmidt for a portion of the marital appreciation of Antone's premarital property was contingent and it did not become fixed and certain until the decree of dissolution was entered. Thus, unlike *Herrmann*, where the clients' liability was immediately fixed by the completion of the prohibited transaction, Antone's liability for a portion of the appreciation of his premarital property did not become immediately fixed on completion of his marriage, or even on the appreciation of the property. *See id.* at 642. Although the seeds of Antone's liability were planted when the marriage occurred and the property appreciated, those seeds did not ripen into compensable damage until Antone's liability became fixed by the dissolution of the marriage.

We have long recognized that where liability is contingent on the occurrence of an uncertain future event, the action is not sufficiently ripe to present a justifiable controversy and the statute of limitations does not accrue until the occurrence of that contingency. *Bachertz v. Hayes–Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (Minn.1937); *accord Rayne State Bank & Trust, Co. v. Nat'l Union Fire Ins. Co.*, 483 So.2d 987, 995–96 (La. 1986); *Poole v. Lowe*, 615 A.2d 589, 593 (D.C.1992). Two modern cases from this court illustrate this point.

In *Grothe v. Shaffer*, 305 Minn. 17, 23–24, 232 N.W.2d 227, 232 (1975), this court held that a claim for contribution by a joint tortfeasor "does not accrue or mature until the person entitled to the contribution has sustained damage by paying more than his fair share of the joint obligation." The resolution of the underlying tort action is a condition precedent to the transformation of a contingent liability to a fixed one. Without a fixed liability, there can be no damage that would trigger the commencement of the statute of limitations on a contribution claim by a joint tortfeasor. *Id.*

Similarly, in *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 404 (Minn.2000), we were asked to determine when the statute of limitations commences against an insurer for recovery of underinsured motorist benefits. We previously held that an underinsured motorist claim is ·not ripe until the motorist's contingent liability is fixed by the resolution in the underlying tort action against the motorist. *Employers Mut. Cos. v. Nordstrom*, 495 N.W.2d 855, 857 (Minn.1993). In *Oanes* we concluded that the injured motorist is not "damaged" for purposes of an underinsured motorist lawsuit until his liability is fixed in the underlying tort action. *Oanes*, 617 N.W.2d at 407.

The damages suffered by the plaintiffs in *Oanes* and *Grothe* were entirely contingent on the occurrence of uncertain events; the establishment of fixed liability by the resolution of the underlying tort actions. *Oanes*, 617 N.W.2d at 402–03, *Grothe*, 305 Minn. at 18–19, 232 N.W.2d at 229. Similarly, Antone's liability to Schmidt for a part of the marital appreciation of his premarital property was entirely contingent on the dissolution of his marriage, an event that was not certain to occur. During the marriage the alleged defect in the antenuptial agreement did not give Schmidt any greater or different rights to a portion of the marital appreciation of Antone's property than she would have had if the defect in the agreement did not exist. The key point is this: If Antone had sued

Mirviss as soon as he was married or when the rental property appreciated in value, merely because he now risked losing a part of the marital appreciation in the event of a dissolution, the suit would not have survived a motion to dismiss because Antone's liability would still be contingent and he would not yet have sustained any actual, compensable damage.

I recognize that the existence of some damage does not depend, under *Herrmann*, on the ability to calculate the exact amount of damages. *Herrmann*, 590 N.W.2d at 643. But this principle has no application here because Antone's liability did not become fixed until within six years from the commencement of the action. In other words, where liability is contingent, neither the fact of liability nor the amount of damage can be determined until the contingency occurs. It is the inability to determine the fact of liability, not the inability to determine the amount of damages that precludes the accrual of a cause of action under the some damage rule.

Mirviss relies on an unpublished court of appeals decision to support his view that Antone was damaged when the antenuptial agreement became irrevocable on his marriage. In *Harmeyer v. Gustafson*, the court of appeals held the cause of action for attorney malpractice accrued when the client signed an irrevocable trust agreement that he claimed was negligently drawn by his attorney. No. C8–00–1191, 2001 WL 122141 (Minn.App. Feb.5, 2001). But *Harmeyer* can be distinguished on two grounds. First, the trust was immediately funded and thus the client immediately lost an interest in the trust funds when they were made subject to the trust. Second, although the client's future loss of the intended tax benefits from the trust was contingent, it was contingent only on his death. Thus, while Antone's future loss was contingent on a marital dissolution

that was not certain to occur, Harmeyer's future loss was contingent on a death that was certain to occur.

## 2. Marriage in reliance

Mirviss argues that Antone suffered damage as soon as he was married because Antone acknowledged in his deposition that he would not have agreed to marry had he known that the martial appreciation of his premarital property was not protected. He argues that a marriage can constitute damages because as soon as Antone married he (1) lost "the legal right to claim an unfettered ownership interest in his non-marital assets;" (2) was subjected to a presumption that everything he gained thereafter became marital property, *see* Minn.Stat. § 518.54, subd. 5 (2004); (3) lost the right to convey his homestead without the signature of Schmidt, *see* Minn.Stat. § 507.02 (2004); and (4) became jointly and severally liable for certain household and family medical expenses, *see* Minn.Stat. § 519.05(a) (2004). Mirviss cites no authority to support the argument that the act of marriage can constitute damage.

Like the risk of losing the marital appreciation of Antone's premarital properties, all of these potentially negative consequences of marriage were contingent on the occurrence of future events that were not certain to occur. The first two were contingent on a marital dissolution. The second two were contingent on Antone's attempting unilaterally to convey his homestead or on Schmidt defaulting on household or family medical debts during the marriage, neither of which was shown to have occurred.

Further, to conclude that the disadvantages of marriage outweigh the benefits so as to cause compensable damages would run contrary to public policy. It would also inject subjectivity into Minnesota's

otherwise objective damage approach to accrual, presenting fact questions on reliance and causation. It would require speculation about whether the alleged defect in the agreement was sufficiently material, given a particular plaintiff's pre and post-marriage financial situations, to support the subjective claim that the client would not have married. I do not find this to be an appropriate basis for applying the statute of limitations.

### 3. Payment of attorneys fees to Mirviss

Finally, Mirviss argues that Antone suffered some damage as soon as he paid Mirviss' fees for preparing an antenuptial agreement. It is not clear in our law whether a client in an attorney malpractice action can state a claim for a refund of attorney fees paid. I note that one legal malpractice treatise, in listing direct and consequential damages recoverable in an attorney malpractice action, does not include recovery of the fees paid to the defendant attorney. 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice,* § 20.1–20.16, at 1–56 (2006). More typically, the fees of the malpractice defendant are viewed as an offset to the other damages for which the professional may be liable. *See, e.g., id.* § 20.18 at 56–61; *Moores v. Greenberg,* 834 F.2d 1105 (1st Cir.1987); *Saffer v. Willoughby,* 143 N.J. 256, 670 A.2d 527 (1996). In other words, an attorney may be able to recover fees even though there was some malpractice. This would suggest that the client would not be able to seek a refund of the fees as

a compensable damage in the malpractice action.

In Minnesota, we have approached this issue under the concept of forfeiture. Thus, in *Perl v. St. Paul Fire & Marine Ins. Co.,* we observed that generally an attorney does not forfeit his or her right to compensation for mere negligence, but only for a breach of a fiduciary duty. 345 N.W.2d 209, 212 (Minn.1984). And, as to forfeiture for breach of a fiduciary duty, we recognized that it was not dependent on any actual loss to the client, but was awarded as "nominal damages" because the client was "deemed injured" as a result of the breach of fiduciary duty. *Id.* Here, Antone only alleges negligence, not breach of fiduciary duty.

Of course, Mirviss' argument also presents causation issues because Mirviss' alleged malpractice did not cause Antone to pay his legal fees. And, as noted earlier, we find support in *Herrmann* for the conclusion that the payment of attorney fees for the services that are claimed to be defective does not trigger the accrual of the malpractice cause of action. 590 N.W.2d at 643–44. In *Herrmann,* the legal services were performed, and the professional fees were presumably paid, in 1986, but the client did not engage in a prohibited transaction, and thus did not incur liability as a result of the attorney's negligent advice, until 1987. 590 N.W.2d at 642. We determined that the cause of action did not accrue until 1987, when the client incurred a fixed and certain liability as a result of the attorney's advice.[1] *Id.*

---

1. Similarly, the cases from other jurisdictions that apply a damage accrual rule similar to Minnesota's do not generally hold that the cause of action for attorney malpractice accrues on the payment of attorney fees for the allegedly defective legal services. *See, e.g., Rayne State Bank & Trust Co. v. Nat'l Union*

*Fire Ins. Co.,* 483 So.2d 987, 996–97 (La. 1986) (holding statute of limitations began to run in 1981, when client initiated foreclosure proceedings on fatally defective mortgages; not in 1979, when mortgages were drafted and attorney fees presumably paid).

Finally, I note that any holding that the action accrues on the payment of Mirviss' attorney fees would conflict with the public policy considerations that underlie our rejection of the historic occurrence rule. Many other jurisdictions have also moved away from the occurrence rule because it was unreasonably harsh to clients and did not serve the interests of judicial economy.

The occurrence rule was harsh to clients because it often would force the client to commence an action for an insignificant part of his potential loss, and then face the prospect that he may be precluded by res judicata from later pursuing a claim for the significant loss.[2] As applied to the facts here, the occurrence rule would have required Antone to sue Mirviss for about $1,400 before December 22, 1992, (within 6 years from the date the antenuptial agreement was drawn and fees were paid), while

he was still married, and any judgment for those fees may have precluded Antone from later suing Mirviss for the litigation costs incurred after 1998[3] or for indemnification of his liability for a portion of the marital appreciation of his premarital property, which only became fixed and certain when the marriage was dissolved in 2000.[4]

The occurrence rule also did not serve the interests of judicial economy because it required a client to sue while he is still married, bringing unhelpful stress to the marriage, and before the potentially significant damage has occurred. Because the payment of attorney fees for legal services is generally simultaneous with the performance of the services, the conclusion that the cause of action accrued on the payment of those fees would effectively reinstate the occurrence rule of accrual for

2. We have held that "a plaintiff may not split his cause of action and bring successive suits involving the same set of factual circumstances." *Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn.1978). A claim or cause of action is "[a] group of operative facts giving rise to one or more bases for suing." *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn.2002). Where the same evidence will sustain both actions, the former judgment is a bar to subsequent action. *McMenomy v. Ryden*, 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967). *But see Care Institute, Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn.2000) (holding that claims cannot be considered the same cause of action if "the right to assert the second claim did not arise at the same time as the right to assert the first claim").

3. Antone incurred legal expenses in the dissolution proceeding defending against Schmidt's claims to a part of the marital appreciation of his premarital property. But for Mirviss' alleged negligence, Schmidt would not have had legal grounds to make those claims and Antone would not have incurred these expenses. Therefore, Antone suffered damages as soon as he paid legal fees to defend against an action caused by Mirviss' alleged negligence. Consistent with our holding that a cause of action accrues upon the

occurrence of any compensable damages, the statute of limitations began at the latest when Antone incurred these legal expenses. *See Hill v. Okay Constr. Co.*, 312 Minn. 324, 347, 252 N.W.2d 107, 121 (Minn.1977) (attorney fees are recoverable "when the attorneys fees and expenses claimed are incurred in other litigation which is necessitated by the act of the party sought to be charged"); *Sirott v. Latts*, 6 Cal.App.4th 923, 8 Cal.Rptr.2d 206, 209 (1992) ("A client suffers damage when he is compelled, as a result of the attorney's error, to incur or pay attorney fees."); *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill.App.3d 349, 234 Ill.Dec. 612, 703 N.E.2d 473, 478 (1998) (same); *Larson v. Norkot Mfg., Inc.*, 653 N.W.2d 33, 36 (N.D. 2002) (same).

4. The antenuptial agreement became operative when the decree of dissolution was entered in 2000. Although issues concerning property division were appealed, the dissolution of the marriage was not appealed and became final in 2000. Thus, the legal basis for Antone's liability under the antenuptial agreement became fixed and certain in 2000, even though it was not judicially determined and the amount was not awarded until 2003.

attorney malpractice claims. I would reject that conclusion for the same reasons that we rejected the occurrence rule of accrual.

Because Antone's legal malpractice action was commenced within six years of the filing of the dissolution proceeding, it is not necessary to precisely determine whether Antone's cause of action accrued in 1998, when he incurred attorney fees to defend against his liability for the marital appreciation of his premarital property, or in 2000, when the decree of dissolution was entered. In either case, Antone's legal malpractice action was commenced before the limitations period expired. Accordingly, I would affirm the result reached by the court of appeals and remand the case to the district court for further proceedings.

PAGE, Justice (dissenting).

I join in the dissent of Justice Hanson.

MEYER, Justice (dissenting).

I join in the dissent of Justice Hanson.