# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-1827
_____

Cardiovascular Systems, Inc.

*Plaintiff - Appellant*

v.

Gary Petrucci; Lela Nadirashvili

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: March 15, 2022
Filed: June 14, 2022
[Unpublished]

_____

Before ERICKSON, GRASZ, and STRAS, Circuit Judges.

_____

PER CURIAM.

After Cardio Flow developed a new medical device, its owners were sued by Cardiovascular Systems for allegedly breaching an eight-year-old settlement

agreement. The district court[1] concluded that two of the claims were filed too late and another one failed to identify an actual breach. We affirm.

I.

Over a decade ago, Dr. Leonid Shturman invented a new device to treat coronary and peripheral artery disease. When he tried to patent it, his former employer, Cardiovascular Systems, claimed that it owned the invention. After he died, whatever interest he had in the contested intellectual property passed to his wife, Lela Nadirashvili.

The parties eventually settled and agreed to split the patents: Cardiovascular Systems received some and Nadirashvili received the others. The idea was that Cardiovascular Systems could use its patents to develop a solid-counterweight device and Nadirashvili could use her own to build a fluid-counterweight device. To deal with any potential overlap, each side gave the other an exclusive license to the other's patents, meaning that each had the ability to access the whole patent portfolio when creating their own devices.

The settlement agreement was just as complicated as it sounds. One complication arose when Nadirashvili sold her patents to a third party, Cardio Flow, in exchange for $50,000 and a 40% stake in the company, with the other 60% owned by Gary Petrucci. According to Cardiovascular Systems, the sale violated the settlement agreement because Cardio Flow never agreed in writing "to be bound to [the] [a]greement as if it were a party." To the extent Petrucci facilitated the breach, Cardiovascular Systems wanted to hold him responsible too.

The second alleged breach came a few years later, when Cardio Flow developed its FreedomFlow device. This time, the allegation is that Petrucci directly

_____

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

orchestrated a breach by having Cardio Flow design a solid-counterweight device—the exact type of technology that Cardiovascular Systems had the exclusive right to develop under the settlement agreement.

Based on these two theories, Cardiovascular Systems sued each of the owners of Cardio Flow: Nadirashvili for breach of the settlement agreement and Petrucci for tortiously interfering with it. The district court dismissed the case after concluding that the claims arising out of the first breach were filed beyond the statute of limitations and the rest did not state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## II.

Delay dooms the first set of claims. Minnesota law requires breach-of-contract actions to be filed within six years of the date of accrual. *See* Minn. Stat. §§ 541.01, 541.05, subdiv. 1(1); *see also Antone v. Mirviss*, 720 N.W.2d 331, 336 (Minn. 2006) (explaining that the "running of the statute of limitations" starts upon "accrual of the cause of action"). The parties disagree about the exact date of accrual, but the underlying facts are undisputed. Cardiovascular Systems did not sue until 2020, nearly eight years after Nadirashvili sold her patents to Cardio Flow. The claims can only be timely, in other words, if they accrued after the sale.

## A.

There is no mystery about when breach-of-contract actions accrue in Minnesota. *See Nettles v. Am. Tel. & Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995) (explaining that in diversity cases, federal courts "apply the law of the forum when ruling on statutes of limitations" (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 108–09 (1945)). According to the Minnesota Supreme Court, they accrue "at the time of the breach [itself], even if 'actual damages resulting therefrom do not occur until afterwards.'" *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 832 (Minn. 2011) (quoting *Bachertz v. Hayes-Lucas Lumber Co.*, 275 N.W. 694, 697 (Minn. 1937)).

This straightforward rule produces a straightforward result here. The breach happened, and the claim accrued, when Nadirashvili failed to get Cardio Flow to agree in writing in 2012 that it would be "bound to [the] [a]greement as if it were a party." Filing the action nearly eight years later, in 2020, was simply too late.

## B.

The same goes for the tortious-interference-with-contract claim against Petrucci. Under Minnesota law, the nature of the underlying cause of action determines the applicable statute of limitations. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975) (per curiam). Here, the tortious-interference claim "stems from and grew out of" Nadirashvili's alleged breach of the settlement agreement, so the same six-year statute of limitations applies. *Id.* The accrual date is also the same, meaning that Cardiovascular Systems was late in filing this claim as well.[2] *See Park Nicollet*, 808 N.W.2d at 832.

## III.

The other tortious-interference claim against Petrucci fares no better. This one is based on his role in getting Nadirashvili to breach the settlement agreement by having Cardio Flow develop a solid-counterweight device. *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 362 (Minn. 1998) (explaining that "intentional procurement of [a] breach" is an element of a tortious-interference claim (quoting *Kjesbo v. Ricks*, 517 N.W.2d 585, 588 (Minn. 1994)).

---

[2]Even if the tortious-interference claim accrued only after Cardiovascular Systems suffered damages, *see Kallok v. Medronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998), the clock started when Nadirashvili's assignment allegedly caused Cardiovascular Systems to lose its "rights to the patents." *See Antone*, 720 N.W.2d at 338 (explaining that the plaintiff suffered damages when he entered a marriage and "lost the legal right to unfettered ownership of his premarital property" under a faulty prenuptial agreement).

Even if Cardiovascular Systems is right that *Nadirashvili* agreed not to design such a device, it still has not identified a breach of the settlement agreement. *Cardio Flow* built the device, and nothing committed her to, in the district court's words, "indefinitely and proactively prevent[ing] third parties from infringing the assigned patents."[3]   And without an underlying breach, Petrucci cannot be liable under a tortious-interference theory. *See id.*

IV.

We accordingly affirm the judgment of the district court and deny the pending motion for judicial notice.

_____

_____

[3]Cardiovascular Systems has made no mention of the underlying breach-of-contract claim against Nadirashvili on appeal. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."). But even if it had, it would fail for the same reason as the claim against Petrucci.