**AMES & FISCHER CO., II, LLP,
et al., Respondents,**

v.

**John R. McDONALD, et al., Appellants
(A10–1439), Defendants (A10–1447),**

**Larsen, Larsen & Associates, P.A.,
et al., Defendants (A10–1439),
Appellants (A10–1447).**

**Nos. A10–1439, A10–1447.**

Court of Appeals of Minnesota.

May 9, 2011.

Steven J. Weintraut, Kristin L. Kingsbury, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, for respondents.

Richard J. Thomas, Byron G. Ascheman, Burke & Thomas, PLLP, St. Paul, MN, for appellants John R. McDonald, et al.

Charles E. Jones, Meagher & Geer, P.L.L.P., Minneapolis, MN, for appellants Larsen, Larsen & Associates, P.A., et al.

Considered and decided by HUDSON, Presiding Judge; JOHNSON, Chief Judge; and TOUSSAINT, Judge.

## OPINION

TOUSSAINT, Judge.

These interlocutory appeals are taken from the district court's denial of appel-

lants' motions for summary judgment. The case involves respondents' claims of professional malpractice against appellants. The district court certified as important and doubtful the legal question of when the statute of limitations begins to run on a professional-malpractice action based on the allegedly negligent failure to make or advise to make an election under section 754 of the Internal Revenue Code (Section 754 election). We conclude that the cause of action accrues, and the statute of limitations begins to run, at the time the tax return is filed without the election.[1] We rephrase the certified question and answer in the affirmative.

## FACTS

The relationships of the parties are as follows. Respondents Ames & Fischer Co., II, LLP, et al. (collectively Ames & Fischer) are three partnerships; a revocable grantor trust established by Mathias Fischer, the family patriarch; individual family members who own the partnerships; and trusts or trustees with an interest in one of the Fischer entities. Appellants John R. McDonald; John R. McDonald, Ltd.; John R. McDonald, S.C.; J. McDonald, S.C.; and McDonald and Munson (collectively McDonald), are attorney John McDonald and his various law firms that provided business and estate planning legal counsel to Ames & Fischer from 1962 to 2007. Appellants Larsen, Larsen & Associates, P.A.; James Larsen; and Michael Larsen (collectively Larsen) are an accounting firm and two certified public accountants. Larsen provided advice concerning financial matters, including tax preparation, to Ames & Fischer from 1987 to 2007. Larsen prepared Ames & Fischer's 2000 and 2001 income-tax returns.

This action is based on Larsen's failure to make and McDonald's failure to advise Ames & Fischer to make Section 754 elections for the three Fischer partnerships for tax-years 2000 and 2001, and this appeal involves the application of the six-year statute of limitations. *See* Minn.Stat. § 541.05, subd. 1(5) (2010) (providing six-year statute of limitations for legal or professional malpractice). Ames & Fischer sued Larsen for accounting malpractice on April 4, 2008, and McDonald for legal malpractice on April 10, 2009. The district court later consolidated the cases.

In the Larsen complaint, Ames & Fischer alleged that Mathias Fischer's death in July 2000 was a qualifying transfer permitting Section 754 elections to be made for tax-year 2000. Ames & Fischer also alleged that sales of partnership interests in 2001 were qualifying transfers permitting Section 754 elections to be made for tax-year 2001. Ames & Fischer alleged that Larsen breached a duty of reasonable care by failing to "provide services and advice that resulted in the making of proper Section 754 Elections ... for the tax years of 2000 and 2001." Ames & Fischer sought

without limitation damages relating to loss of tax deductions to all or some of the Plaintiffs, increased taxes on sale of

---

1. By notice of related appeal, respondents also ask this court to decide whether the continuous-representation doctrine should be recognized in professional-malpractice cases. We question whether the related appeal is properly before this court. The interlocutory appeal is authorized because the district court has carefully framed the legal question and certified it as important and doubtful. *See* Minn. R. Civ.App. P. 103.03(i) (providing for certified-question appeal). But because we hold that the cause of action accrues at the time the tax return is filed without the election, which on the facts of this case is inconsistent with continuous representation tolling the statute of limitations, we need not decide whether Ames & Fischer's related appeal is properly before us.

partnership assets, increased taxes on the future sale of partnership assets, and professional fees and expenses expended to correct the accounting errors resulting from the failure to effectuate the Section 754 elections ... for tax years 2000 and 2001.

In the McDonald complaint, Ames & Fischer alleged that McDonald breached the standard of care "by not telling Larsen or Plaintiffs to make Section 754 Elections ... for the tax years of 2000 and 2001," as well as "by not telling Larsen or Plaintiffs to take steps to make 754 Elections ... for the tax returns that had already been filed for the 2000 and 2001 tax years." Ames & Fischer sought similar damages as against Larsen.

In October 2008, Thomas Boesen, a certified public accountant, prepared an expert report on behalf of Ames & Fischer concerning Larsen's alleged negligence. Boesen estimated damages of approximately $2.5 million as of August 1, 2009. Boesen explained that if a qualified event—such as the death of a partner or the transfer of a partnership interest—occurs, a Section 754 election may be made. This allows the partnership to increase the tax basis of its assets, thereby reducing its taxable income when the related assets are sold or depreciated. Boesen opined that Larsen's breaches of the standard of care occurred "when [Larsen] prepared and signed" the entities' tax returns, among other incidents and opportunities. Later in the report, Boesen stated that Larsen "should have recommended" making Section 754 elections for tax-years 2000 and 2001 and the election "should have been included with [the entities'] 2000 or 2001 tax returns." Boesen stated that Larsen's breach occurred "as [it] prepared" the partnerships' 2000 and 2001 tax returns, explaining that timely Section 754 elections "would have enabled [the] entities

to step-up the basis of their assets by millions of dollars," which would have reduced taxable income and increased depreciation deductions. Boesen's calculation of damages included overpaid taxes and interest on the overpaid taxes.

In an August 2009 affidavit, Boesen stated that his expert report "does not focus on when the damage occurred, nor does it consider if damage can be 'incurred' before it is paid or discovered." Boesen then opined that "the potential impact of the failure to make the 754 elections and obtain the potential tax benefits for the 2000 and 2001 tax years did not occur until, at the earliest, one year beyond the original due date of April 15 of the year after that tax year." He asserted that during the 12–month extension period "election would have still obtained all of the tax benefits and prevented any damage to any of the owners of the entities" because an adjustment "will always relate back to the tax year that requires revision." Boesen also asserted that Mathias Fischer's death on July 22, 2000, and transfers of partnership interests on May 1, 2001, were "separate and distinct events" allowing Section 754 elections to be made for the 2000 and 2001 tax years.

Boesen submitted another affidavit in November 2009, in which he explained: "Obtaining a stepped-up basis in partnership assets is financially advantageous because additional depreciation deductions may be available to the partner(s), which reduces the taxable income, and if partnership assets are sold, income taxes resulting from the sale will be reduced due to the stepped-up basis." But, he acknowledged, a Section 754 election is not advisable in all circumstances—specifically when there is a stepped-down basis because the market value of partnership assets is lower than the tax basis of those assets. Boesen then alleged: "Larsens' negligence wasn't their

original preparation of the tax returns without the Elections. It was their failure to ensure that the 754 Elections were timely made." Boesen attached a supplemental report to the affidavit, in which he calculated more than $1.9 million in damages that were limited to the failure to make Section 754 elections for tax-year 2001.

Thomas Woessner, an attorney and certified public accountant, prepared an expert report for Ames & Fischer concerning McDonald's alleged negligence. Woessner opined that reasonable care required McDonald to recommend to Larsen and to Ames & Fischer that the three Fisher entities make Section 754 elections for tax-years 2000 and 2001. Woessner stated that this "caus[ed] the owners of the three entities to incur unnecessary income taxes," and he agreed with Boesen's calculation of damages. Because a Section 754 election is eligible for an automatic 12-month extension, the elections "could have been made by April 15, 2002, for the 2000 tax year" and "could have independently been made by April 15, 2003, for the 2001 tax year." According to Woessner: "There is very little, if any, downside to making a 754 Election, and the benefit of reducing future income-tax liability greatly outweighs any potential downside."

After McDonald moved for summary judgment on the basis of the statute of limitations, the district court initially agreed that the claims against McDonald were time barred. After Larsen moved for summary judgment, the court reconsidered its ruling, concluding that the statute of limitations did not begin to run until the end of the 12-month automatic extension period. The court denied Larsen's motion for summary judgment and vacated its earlier dismissal of the claims against McDonald. These interlocutory appeals are taken from the district court's order certifying as important and doubtful the question of when the cause of action accrues and the statute of limitations begins to run.

## ISSUES

I. When does the limitations period for a professional-malpractice action based on allegations of negligent failure to make or advise to make a Section 754 election begin to run?

II. Is the certified question properly before this court as a doubtful question of law?

## ANALYSIS

An interlocutory appeal may be taken from an order denying summary judgment "if the trial court certifies that the question presented is important and doubtful." Minn. R. Civ.App. P. 103.03(i). We review de novo whether a genuine issue of material fact exists and whether the district court correctly applied the law. *Murphy v. Allina Health Sys.*, 668 N.W.2d 17, 20 (Minn. App.2003), *review denied* (Minn. Nov. 18, 2003).

### I.

■ The district court certified the following question:

> Does a cause of action for professional malpractice arising out of a failure to make a Section 754 election accrue when (1) the tax return is filed without the election, or (2) upon the expiration of the automatic extension period?

We rephrase the question to read as follows:

> Does a cause of action for professional malpractice arising out of a failure to make a Section 754 election accrue when the tax return is filed without the elec-

tion rather than when the automatic extension period expires? [2]

■ The statute of limitations for legal or professional malpractice is six years. Minn.Stat. § 541.05, subd. 1(5). The limitations period "begins to run when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn.2006). This showing is minimal; the plaintiff need only allege facts sufficient to state a claim, which occurs when it is possible that any evidence consistent with the plaintiff's theory might be produced to establish each element of the tort. *Noske v. Friedberg*, 670 N.W.2d 740, 742–43 (Minn.2003).

■ Minnesota follows the damage-accrual rule.[3] *Antone*, 720 N.W.2d at 335–36. Under this rule, a cause of action accrues and the statute of limitations begins to run when " 'some' damage has occurred as a result of the alleged malpractice." *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn. 1999). This does not depend on the ability to ascertain the exact amount of damages—absent evidence of fraudulent concealment—and the limitations period is not tolled by ignorance of the cause of action. *Id.* "Some damage" is defined broadly, and the cause of action accrues "on the occurrence of any compensable damage, whether specifically identified in the complaint or not." *Antone*, 720 N.W.2d at 336. That is, damage for purposes of the damage-accrual rule occurs once a party suffers any legally cognizable damage, regardless of whether it is claimed or sought in the pleadings.

The district court reasoned that Ames & Fischer did not "pass a point of no return" or suffer "immediate and irremediable" damages until the 12–month automatic extension period expired after the 2000 and 2001 tax returns were filed because a Section 754 election may be made for that tax year as a matter of right during that time period. Thus, the court concluded, causes of action accrued regarding the 2000 and 2001 returns on April 16, 2002, and April 16, 2003, respectively. Similarly, Ames & Fischer argue that the tax returns for 2000 and 2001 were due on April 15 of 2001 and 2002, respectively, and damages were not incurred until one year after those dates, when the automatic extension period expired.

McDonald argues that Ames & Fischer "overpaid taxes when both the 2000 tax returns were filed (at some point prior to April 15, 2001) and again overpaid taxes when the 2001 tax returns were filed (sometime prior to April 15, 2002)," and that Ames & Fischer incurred damages at that time. Larsen, meanwhile, argues that Ames & Fischer's "claims against Larsen accrued upon the preparation of the 2000 returns in early 2001" because its alleged breach occurred at that time. Larsen also contends that the relevant date is the date it prepared the return because "[t]he way to correct the error and to obtain recovery of the overpaid taxes would be to prepare

2. Appellate courts generally prefer certified questions that may be answered with an unqualified "yes" or "no." *See Minn. Citizens Concerned for Life, Inc. v. Kelley*, 698 N.W.2d 424, 429–30 (Minn.2005) (recognizing general preference for unqualified yes or no answers to certified questions).

3. The damage-accrual rule is a "middle ground" between two other rules followed by some jurisdictions: the occurrence rule, which is based on when a negligent act is committed, and the discovery rule, which is based on when the plaintiff knows or should know of the injury. *Antone*, 720 N.W.2d at 335.

an amended return," and "the cost of preparing an amended return to include the elections would represent 'some damage' that immediately occurred."

We can most easily deal with Larsen's theory. Minnesota has rejected the occurrence-accrual rule, which provides that a cause of action accrues when the alleged negligence occurs. *Id.* at 335. Although the alleged negligent act—failing to make or advise to make a Section 754 election—may have occurred when Larsen prepared Ames & Fischer's tax returns, we do not see how Ames & Fischer were *damaged* at that time. Larsen's central damages argument is that having to prepare an amended return in order to be refunded overpaid taxes is some damage that would support a cause of action at that time. But taxes are not overpaid until a tax return is filed. Until that point, Ames & Fischer were allegedly negligently advised, but Larsen could have on its own recognized its alleged negligence and corrected its error before Ames & Fischer suffered damages. We conclude that Ames & Fischer's cause of action did not accrue at the time Larsen prepared the tax returns.

We now turn to the question of whether the cause of action accrued when the returns were filed or when the automatic extension period expired. As one New York court has aptly observed, finding that a cause of action does not accrue until the end of the automatic extension period is based on "the untenable theory that a new act of malpractice is committed so long as a professional remains ignorant of his or her prior malpractice." *Goulding v. Solomon,* 123 Misc.2d 954, 475 N.Y.S.2d 723, 725 (N.Y.Civ.Ct.1984). Concluding that a malpractice action against an accountant for negligence in preparing an income-tax return accrues at the deadline for filing the return, the court explained that the theory that "the statute does not run until

the time to 'cure' the defective return has elapsed" would "cast on the professional the duty constantly to review all of his or her activities in times past ... to ascertain and cure past malpractice." *Id.*

Similarly, a Georgia court, applying the rule that "a cause of action accrues when there is both a wrongful act and damage"—on its face identical to Minnesota's damage-accrual rule—held that a cause of action for professional negligence based on overpaid taxes accrues at the time the tax is paid. *Leon Jones Feed & Grain, Inc. v. Gen. Bus. Servs., Inc.,* 175 Ga.App. 569, 333 S.E.2d 861, 862 (1985). The court observed that, even if the taxpayer could subsequently obtain a refund as allowed by law, the taxpayer incurred immediate damage at the time the tax was overpaid, namely, "the loss of the use of the money paid unnecessarily." *Id.* at 863.

The Minnesota Supreme Court's opinions in *Herrmann* and *Antone,* although not directly on point, are also instructive. The *Herrmann* court held that the statute of limitations for a legal-malpractice claim began to run at the time a transaction creating immediate tax liability occurred; in that case, the plaintiffs' action was based on the alleged failure to properly advise them about the transaction. 590 N.W.2d at 643–44.

*Antone* involved a plaintiff who had retained counsel to draft a premarital contract. 720 N.W.2d at 337. The court held that the cause of action for legal malpractice based on that transaction accrued when the plaintiff married his wife. *Id.* The court explained that, when he got married, the plaintiff "passed a point of no return with respect to the laws of marital and nonmarital property and he did so without the legal shield he retained [the attorney] to provide." *Id.* At the time of the marriage, the plaintiff's spouse "was legally entitled to make a claim upon a

portion of any appreciation in his premarital property." *Id.* The court specifically rejected the argument that "the seeds of some damage did not ripen until the dissolution of the marriage," reasoning that such a conclusion would "come very close to establishing a discovery rule." *Id.* at 338.

Analogizing to the facts of the present case, we conclude that Ames & Fischer's cause of action accrued, and the statute of limitations began to run, when the tax returns were filed.[4] At bottom, the alleged negligence consists of McDonald's failure to advise to make and Larsen's failure to make the Section 754 elections. To the extent Ames & Fischer were damaged, they were damaged when the returns were filed without the Section 754 elections, which resulted in the immediate overpayment of taxes and the loss of the use of those funds. Even if the overpaid taxes could be recovered by filing an amended return within 12 months, the loss of the use of those funds during that time would persist and the cost of filing an amended return would be incurred. Later opportunities to correct the error and mitigate damages cannot toll the statute of limitations. Because Ames & Fischer incurred some damage at the time the tax returns were filed, the cause of action accrued and the statute of limitations began to run at that time.

## II.

Ames & Fischer also argue that this court should dismiss McDonald's and Larsen's appeals because the legal question certified by the district court is not doubtful. But the district court concluded, and Ames & Fischer contends, that a cause of action for professional malpractice for failure to make a Section 754 election does not accrue until the end of the automatic extension period, which is contrary to our holding that the cause of action accrued when the income-tax returns were filed without making the election. We therefore decline to dismiss the appeals.

## DECISION

These interlocutory appeals arise out Ames & Fischer's allegations of legal and accounting malpractice. The malpractice claims are based on the failure to make or to advise to make Section 754 elections with the partnerships' income-tax returns, resulting in overpaid taxes. Although Ames & Fischer may have been able to recover the overpaid taxes by filing an amended return within the 12–month automatic extension period after the tax returns were filed, they incurred legally cognizable damages—loss of the use of the money and the cost of making an amended return—as soon as the returns were filed. We hold that the statute of limitations began to run at that time, and after rephrasing the certified question, we answer it in the affirmative.

**Certified question answered in the affirmative.**

---

4. A remaining issue with respect to Ames & Fischer's claims against Larsen is whether the failure to make Section 754 elections for tax years 2000 and 2001 constitute separate acts of negligence for statute-of-limitations purposes—that is, whether claims based on the alleged malpractice concerning the 2001 returns have their own accrual date on which the six-year limitations period began to run.

Because Ames & Fischer did not sue McDonald until 2009, those claims are time barred. But because Ames & Fischer sued Larsen on April 4, 2008, this issue may affect Ames & Fischer's ability to bring a claim against Larsen. Although Larsen and Ames & Fischer briefed this issue on appeal, it is outside the scope of the certified question, and we therefore do not address it.